STATE ex rel. GREAT NORTHERN RY. CO., Respondents, *v.* STATE BOARD OF EQUALIZATION et al., Appellants.

No. 8766.

Submitted April 12, 1948. Decided June 14, 1948.

194 Pac. (2d) 627

Mr. H. O. Vralsted, Counsel for State Board of Equalization, of Helena, Mr. R. V. Bottomly, Atty. Gen., and Mr. Clarence Hanley, Asst. Atty. Gen., for appellants. Mr. Vralsted argued the cause orally.

Mr. T. B. Weir, Mr. Newell Gough, Jr., and Mr. E. K. Matson, all of Helena, for respondent. Mr. Matson argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal from a judgment in mandamus proceedings, directing the defendant board to approve a claim of $639.50 with interest for refund of gasoline license tax paid on gasoline lost in transit. The gasoline was purchased by the California Company, a gasoline dealer in Montana, from the Texas Company, a corporation engaged in the business of refining gasoline at Sunburst and placed in two tank cars for shipment by relator. One car was consigned to Great Falls Line, Great Falls, and the other to the California Company at Butte; both cars were derailed in transit and the entire contents of more than 13,000 gallons was spilled and entirely lost.

The California Company had paid the sum of $639.50 as taxes to the Texas Company, being 5 cents per gallon, less 2% deduction for evaporation. The California Company on September

14, 1946, filed a claim with defendant board for refund of the tax which was disallowed in October. Relator having reimbursed the California Company for the loss of the gasoline and for the tax, took an assignment of the claim after it had been rejected.

This application was thereafter instituted resulting in the judgment appealed from.

The principal question involved is whether a purchaser of gasoline who has paid the gasoline license tax of 5 cents per gallon is entitled to a refund of the tax when the gasoline is destroyed in transit.

The refund statute was first enacted as Chapter 17, Laws of 1927. As amended it is now section 2396.4, Revised Codes of Montana 1935. Section 2396.4 allows the refund to any person who has purchased and used gasoline on which the license tax has been paid "for the purpose of operating or propelling stationary gas engines, tractors used for agricultural purposes other than on the public highways or streets of this state, motor boats, aeroplanes or aircraft, or for cleaning or dyeing, or for any commercial use other than propelling vehicles upon any of the public highways or streets of this state."

The refund is obtained by filing a sworn statement with the board of equalization setting forth among other things that the gasoline "has been used by such consumer other than for propelling vehicles operated upon any of the public highways or streets of this state."

These provisions as now appearing in section 2396.4 are exactly the same as when originally enacted by Chapter 17, Laws 1927. On the same day that Chapter 17 was approved, Chapter 19 of the same legislative assembly was also approved wherein we think that assembly placed its own interpretation upon the meaning of the refund statute. In section 13 of Chapter 19, Laws of 1927, the legislature provided for the disposition of the funds produced by the gasoline license tax. In general it provided for their expenditure in the construction, reconstruction, betterment and maintenance of highways and "for the purpose of payment of refunds and drawbacks authorized by law to be made to

purchasers of gasoline used in this state for other purposes than the propulsion of motor vehicles over the public highways and streets of this state.''

It seems to us that the legislature simply intended to impose the tax on all gasoline used in propelling vehicles on the highways of the state and that the legislative assembly that passed the refund statute so understood it. This is shown not only by Chapter 19, Laws 1927, but also by section 2396.4 authorizing a refund upon a sworn statement that it was used for other purposes than propelling vehicles operated on any of the public highways or streets of the state. If the statute is susceptible to the above interpretation, then it would follow that the purchaser of gasoline wasted and spilled in transit would be entitled to a refund. Guardia v. Johnson, 134 Cal. App. 574, 25 Pac. (2d) 856.

On the proper construction of our statute, the case of Mason-Walsh-Atkinson-Kier Co. v. Case, 2 Wash. (2d) 33, 97 Pac. (2d) 165, 167, is helpful. The statute there considered was nearly the same as ours. In reviewing the history of the gasoline tax law in the state of Washington the court in part said:

''In 1923, the legislature, by chapter 81, p. 242, amended the 1921 act, and added several new sections thereto, which contain the rudiments of our present gasoline tax system. It was provided, in the new and additional sections, that every person, firm, or corporation who should *use* liquid fuel for the purpose of operating motor vehicles upon the public highways should pay 'an excise tax of two cents per gallon upon all such liquid fuel so used.' It specifically provided, however, that, if the liquid fuel was used for the purpose of propelling stationary gas engines, farm tractors, or motor boats, or other commercial use, 'except in motor vehicles operated or intended to be operated upon any of the public highways of the state,' reimbursement should be made by the state treasurer upon claims prepared and filed within the time and in the manner therein set out.''

The court held that the 1921 Act was an excise tax on the sale of liquid fuel.

It then said: ''The new sections added by the 1923 act clearly

impose a tax on the *use* of liquid fuel in operating motor vehicles on the roads. The connection of this tax with the state highway program is further emphasized by the fact that the next legislation on the subject is found in an act relating to the public highways (Chapter 88, page 159, Laws of 1929), the short title of which is 'Highways.' An additional tax of one cent per gallon is imposed in this highway act, and it is provided: 'Sec. 4. Every person, firm, or corporation, including distributors, who shall *use* liquid fuel for the purpose of operating motor vehicles, including motor trucks, upon the public highways of the state, or the political subdivisions thereof, * * * shall pay a tax of one cent per gallon in addition to the tax imposed by section 2 of Chapter 81 of the Laws of 1923, * * * upon all such liquid fuel *so used,* * * *.'

"It is further provided in this chapter that the revenue produced by the additional cent so provided should be placed in a fund which is known as the 'lateral highway fund,' to be divided among the counties of the state to be used in the construction and improvement of lateral highways."

Continuing in reviewing subsequent legislation, the court said: "The next act relating to the subject is chapter 140, page 430, Laws of 1931. This raised the tax to four cents per gallon 'upon all such liquid fuel so *used'*, that is, used in operating motor vehicles upon the public highways of the state. This act was followed by chapter 58, page 298, Laws of 1933, which, as amended in 1935, 1937, and 1939, Laws 1935, 1937, 1939, pp. 269, 1086, 538, is the existing law. The short title of this act is 'Petroleum Products: Tax and Regulation.' This act provided that distributors of motor vehicle fuels and other petroleum products should be licensed and bonded; and, 'Sec. 5. Every distributor shall pay, in addition to any other taxes provided by law, an excise tax to the treasurer of this state of five (5) cents for each gallon of motor vehicle fuel sold, distributed or used by it in the State of Washington. * * *'

"But, of the sums so paid, it was the legislative intention that the state should retain as taxes only that portion paid with

reference to fuel used to propel motor vehicles on the highways. This is conclusively shown by section 18(a), which reads, in part, as follows: '*Any person* who shall use any motor vehicle fuel as herein defined for the purpose of operating or propelling stationary gas engines, farm tractors, aircraft, or boats or *who shall purchase and use any such fuel* for cleaning or dyeing or other use of the same, *except in motor vehicles operated or intended to be operated upon the public highways of the state,* or export the same for use outside of this state, and who shall have paid any license tax for such motor vehicle fuel hereby required to be paid, either directly to the vendor from whom it was purchased or indirectly by adding the amount of such license tax to the price of such fuel, *shall be reimbursed* * * *'

"When one reads the italicized portions of the above quoted section consecutively, 'Any person * * * who shall purchase and use any such fuel * * *, except in motor vehicles operated or intended to be operated upon the public highways of the state, * * * shall be reimbursed,' it becomes manifest that the legislature of 1933 continued to adhere to the just and reasonable policy which governed its predecessors, to-wit: That the burden of special taxes created and imposed to raise funds for the construction and upkeep of the costly and highly specialized highways suitable for motor vehicle traffic ought to be borne by those who use the highways for that traffic."

The slight difference between the Washington statute and ▮▮▮ our own does not compel a different result. The Supreme Court of Idaho has also reached the same result as to its 1945 laws which, on the question of refunds, is very much like ours. Union Pac. Ry. Co. v. Riggs, 66 Idaho 677, 166 Pac. (2d) 926. See also, Allen v. Jones, 47 S. D. 603, 201 N. W. 353.

It is our view that the trial court properly held that the purchaser of the gasoline in question was entitled to a refund if other provisions of the law were met. Were we in doubt on the subject we would resolve that doubt in favor of the right to the refund because otherwise the statute would be invalid as unjustly discriminatory and as denying the equal protection of

the laws. Compare State ex rel. Anderson v. Rayner, 60 Idaho 706, 96 Pac. (2d) 244, and Champlin Refining Co. v. Cruse, 115 Colo. 329, 173 Pac. (2d) 213. One illustration will suffice to show that this is so.

If the board's interpretation were accepted then this result would follow: A, a farmer, buys a quantity of gasoline for use in operating his tractor in agricultural purposes other than on the public highways or streets of the state and actually uses it for that purpose. Under the statute he is entitled to a refund. B, his neighbor, buys the same amount of gasoline intended to be used for the same purpose. Through misfortune his gasoline was spilled or burned in a fire and he obtained no beneficial use of it whatsoever. If the board's interpretation of the statute be correct then B not only loses the gasoline but also has no right to the refund of the 5 cents per gallon tax. While a license tax is not subject to the uniformity provisions of our state Constitution (State ex rel. Griffin v. Greene, 104 Mont. 460, 67 Pac. (2d) 995, 111 A. L. R. 770), yet arbitrary and unreasonable classifications are not permissible. (Id.)

Our duty is to uphold the statute if possible and to place such a construction upon the statute, if possible, as will uphold its validity. We think the construction placed upon it by the same legislative assembly that adopted it is the correct construction.

The suggestion in the dissenting opinion that because the law (Chapt. 39, Laws 1945) in measuring the amount of the license tax allows a deduction of 2% "for evaporation and other loss of gasoline handled by such dealer" precludes any other allowance for gasoline lost is not meritorious.

The board, it should be noted, assigned that as one of the grounds for the motion to quash but makes no argument on the point before this court.

Under the familiar rule of ejusdem generis the "other loss of gasoline handled by such dealer" means a loss akin to that of evaporation. It would cover spillage through handling but,

in our opinion, was never intended to cover a case where the entire gallonage was lost by derailment or other similar hazard.

The case of Barnsdall Refining Corporation v. Ford, 194 Ark. 658, 109 S. W. (2d) 151, is not applicable to Montana because in that case no statute was involved authorizing a refund for taxes paid on gasoline not used on the public highways of the state. Here the tax is refundable because of the refund statute and not because of the 2% evaporation clause.

The only question here is, Does the 2% evaporation clause preclude the refund for gasoline lost or destroyed.

It is not claimed to be refundable because of the 2% evaporation clause as was the Barnsdall case, supra, but it is claimed to be refundable here because of the general refund statute which we hold compels a refund for gasoline not used in propelling vehicles over the public highways. The case of State v. Standard Oil Co. of Ind., 222 Iowa 1209, 271 N. W. 185, relied upon in the dissenting opinion had nothing to do with gasoline lost or destroyed nor in fact with gasoline not used to propel vehicles over the highways. The statutes of Iowa referred to in the opinion in that case expressly allow a refund of the tax on gasoline or motor fuel "destroyed by fire, lightning, storm or accident not caused by the fault of such distributor or any employee thereof." Code Iowa 1931, sec. 5093-a5. The court expressly pointed out that the claim of appellant was not being made under the refund statutes but it was claimed that the tax was illegally collected.

The argument in the dissenting opinion that the arbitrary deduction of 2% for evaporation is a provision advantageous to the industry as a whole does not meet the point on discrimination. The gasoline industry is not affected by our refund statutes. The industry collects the tax from the consumer. The tax is in effect against the consumer. 51 Am. Jur. 1085. The legislature so recognizes the operation of our statutes and allows the consumer a refund when he uses the gasoline otherwise than for propelling vehicles on the public highways. It is the con-

sumer and not the gasoline dealer who is adversely affected if the refund is not allowed.

Section 2396.4, as amended by Chapter 67, Laws 1939, provides: "Such refund or drawbacks shall be made only to, and on the application of, the actual purchaser and user of the gasoline upon which refund is claimed and the burden of establishing the validity of the claim rests upon the claimant."

It is contended by defendant that this relator cannot claim the refund in question because it is not the purchaser of the gasoline in question. The application was made by the California Company, the purchaser, and relator here took an assignment from the California Company. There is nothing in the statute which prevents the claimant who was the actual purchaser of the gasoline from assigning his claim for refund to another particularly where, as here, he himself makes the application for refund before assignment.

The final contention is that the court erred in not sustaining defendant's motion to quash the alternative writ of mandate upon the ground stated in the motion that the application does not state facts sufficient to constitute a cause of action or grounds for the issuance of the writ in that it fails to allege facts showing a clear legal right in plaintiff to the relief demanded and the failure of a clear legal duty in defendant owing to plaintiff.

The contention is that the application fails to allege that the claim presented to the defendant board was accompanied by the invoice or invoices issued at the time of the sale of the gasoline.

Chapter 67, Laws of 1939, provides that the sworn statement presented to the board of equalization by the applicant for a refund shall be "accompanied by the invoice or invoices issued to the claimant at the time of purchase of such gasoline showing such purchase and use." And it also provides: "When gasoline is sold to a person who shall claim to be entitled to a refund of the tax imposed, the seller of such gasoline shall make and deliver at the time of such sale separate invoices for each pur-

chase on invoice forms approved by the state board of equalization showing the name and address of the seller and the name and address of the purchaser, the number of gallons of gasoline so sold in words and figures and the date of such purchase, which invoice, attached to the claim presented shall be the only proof upon which a legal claim can be made for a refund based upon such purchase. The seller shall retain his duplicate original invoices for the period of one year from and after the date of issuance, during which period they shall be open to inspection by the state board of equalization and its agents. Such invoices shall be legibly written and shall be void if any corrections or erasures appear on the face thereof.''

The application for the writ of mandate alleges that the California Company secured from the state board of equalization a permit to apply for a refund and thereafter filed with the board formal claim for refund of the sum of $639.50; that ''said claim being submitted to said board in duplicate on printed forms or blanks furnished by said board, supplemented by a typewritten statement of claim, both of which documents were duly verified on behalf of said California Company. That in said documents were set forth in detail the facts and circumstances surrounding the purchase and shipping of said gasoline at and from said Sunburst by said California Company and the loss thereof while in the possession of said Great Northern Railway Company.''

These allegations are not sufficient to justify the inference ▮ that the invoice accompanied the claim.

While the motion to quash does not specifically point out ▮ that the petition failed to allege that the invoice accompanied the claim, yet in order to show a clear legal duty on the part of defendant to approve the claim, in view of the language of our statute, the petition must allege that the invoice accompanied the claim. Failing to so allege, the petition does not show either a clear legal right in plaintiff to the relief demanded or a clear legal duty on the part of defendants to approve the claim.

The motion was sufficient to raise these points. Whether under the statute a showing may be made that would excuse the failure to attach the invoice need not now be determined since relator asserts in its brief that the invoice actually did accompany the claim and the petition may accordingly be amended to so show.

The court erred in not sustaining the motion to quash. The cause is remanded with directions to set aside the order denying the motion to quash and to enter an order granting the motion with leave to relator to amend the petition within a time to be specified.

Associate Justices Gibson and Metcalf concur.

MR. JUSTICE CHOATE (dissenting).

It is my opinion that the only statute of Montana which provides for the refund of gasoline license taxes is section 2396.4, Revised Codes of Montana 1935, as amended by Chapter 67, Session Laws of Montana of 1939, and by Chapter 130, Session Laws of 1947. This section is specific in its terms as to *who* shall be entitled to a refund or drawback for gasoline license taxes paid and nowhere in said Act can any language be found which either directly or indirectly authorizes a refund of such taxes upon gasoline wasted, spilled or destroyed in transit. Not only does this statute contain no language supporting relators' right to the relief sought but section 2381.12 embodies language which in my opinion is fatal to relators' contention. This section provides that ''In making the computation of license tax due and in making payment thereof, two per centum (2%) of the amount of such tax shall be deducted by the dealer as an allowance for evaporation and other loss of gasoline handled by such dealer.''

It is my view of the law that this section provides for an arbitrary deduction to compensate dealers for loss by evaporation and all *"other losses."* Legislative policy is of course beyond our province but if it be suggested that this statute is unreasonable or discriminatory, the apparent answer is that in its actual operation, said section allows the gasoline industry as a whole

what might be properly termed an unearned deduction of 2%, a provision which is obviously of distinct advantage to the industry as a whole. Such statutes as this are not unusual. In the state of Iowa the law permitted the arbitrary deduction of 3% of the invoiced gallonage to take care of evaporation and other losses. The Supreme Court in the case of State v. Standard Oil Co. of Indiana, 222 Iowa 1209, 271 N. W. 185, 188, stated the reasons for adopting an arbitrary deduction for losses in the following language: "The purpose of knowing the 'invoiced gallonage' can be readily understood. It was no doubt inserted for the purpose of helping the State officials in properly checking the amount of gasoline which came into Iowa. If the State officials had to check every car, the task would be an impossible one. Thousands of cars of gasoline are shipped into Iowa. There is no way that the officials of this State charged, with the collection of this tax, could measure every one of these cars. Upon the honesty of the individual or corporation that receives the shipment depended the accuracy of the amount reported. To provide a method which would be simpler and more efficient the Legislature provided for the reporting of the 'invoiced gallonage,' * * *."

What was said by the Iowa court is very much in point with the present case. If claims of this sort are allowed there is no way whereby the inspectors for the board can determine the extent and amount of such losses. The legislature has adopted the 2% deduction as a method of compensating dealers for losses by evaporation and other losses. If dealers desire to protect themselves against such losses they may do so by securing contracts of insurance but the state of Montana has not insured them against the loss of gasoline where they have paid the taxes.

In Barnsdall Refining Corporation v. Ford, 194 Ark. 658, 109 S. W. (2d) 151, a statute provided that certain dealers in gasoline who pay the tax thereon to the state shall be entitled to take credit on such tax for losses by reason of evaporation. The court held that a gasoline manufacturer or dealer was not entitled to credit on taxes due on gasoline shipments into the state

for the amount of taxes previously paid on gasoline destroyed by it as defective because of long storage or by fire.

The judgment should be reversed.

Mr. Chief Justice Adair (dissenting).

I concur in the dissent of Mr. Justice Choate.