STATE OF MONTANA, EX REL. SAM W. MITCHELL, SEC-RETARY OF STATE OF THE STATE OF MONTANA, RELATOR, *v.* THE DISTRICT COURT OF THE FIRST JUDICIAL DIS-TRICT OF THE STATE OF MONTANA, IN AND FOR THE COUN-TY OF LEWIS AND CLARK, AND THE HONORABLE GEORGE W. PADBURY, JR., A JUDGE PRESIDING THEREIN, RESPONDENTS.

No. 9488.

Submitted October 14, 1954. Decided October 16, 1954.

275 Pac. (2d) 642.

Mr. Arnold H. Olsen, Atty. Gen., Mr. William F. Crowley, Asst. Atty. Gen., Mr. Louis Forsell, Asst. Atty. Gen., Mr. Charles W. Leaphart, Jr., Asst. Atty. Gen., for relator.

Mr. Ralph J. Anderson, and Mr. Edmond G. Toomey, Helena, for respondent.

Mr. Olsen, Mr. Forsell, Mr. Toomey and Mr. Anderson argued orally.

MR. CHIEF JUSTICE ADAIR:

Original application for a writ of prohibition.

At the general election held throughout the State of Montana on November 4, 1952, John E. Henry was duly elected to office as a member of the Montana railroad commission, for a full term of six years, to commence on the first Monday of January 1953. Thereafter he duly qualified and on January 5, 1953, took the office and entered upon the duties attendant thereto.

On July 20, 1954, the state-wide primary nominating election was held in the State of Montana.

On August 17, 1954, John E. Henry, then a duly qualified and acting commissioner and the chairman of the Montana railroad commission, was appointed by President Eisenhower to the full time federal board of parole situate at Washington, D. C.

On August 19, 1954, the United States Senate confirmed the President's appointment of John E. Henry to such federal board of parole for a term which expires September 30, 1956.

On September 2, 1954, the Governor of the State of Montana filed in the office of Sam W. Mitchell, secretary of state of the State of Montana, his certain proclamation issued on the day previous, wherein he did proclaim that on Tuesday, the second day of November, A. D., 1954, there will be held in the State of Montana a general election by the qualified electors of said state to elect various state and county officers and to vote upon one proposed constitutional amendment and three referendum measures. Among the officers to be elected at such general election the proclamation lists one railroad and public service commissioner.

On or about September 23, 1954, John E. Henry transmitted his written resignation as a member of the Montana railroad and public service commission to the Governor, effective September 30, 1954.

Thereafter Henry qualified for and took office as a member of such federal board of parole.

The law provides that the board of railroad commissioners of the State of Montana shall consist of three members. R. C. M. 1947, sec. 72-101.

The acceptance by John E. Henry of appointment to the full time board of parole at Washington, D. C., and his resignation from office as commissioner and chairman of the Montana board of railroad commissioners created a vacancy in the board leaving but two members thereon.

On October 1, 1954, the Governor appointed Frank W. Hazelbaker to fill the office and chair theretofore occupied by John E. Henry, whereupon Mr. Hazelbaker promptly qualified and assumed the office on the Montana board of railroad commissioners.

Thereupon on October 1, 1954, the Governor issued and signed two separate official writings each being addressed to the secretary of state and to the state board of examiners and delivered same to the office of the secretary of state where they were filed. The first of such writings proclaims and declares:

"Gentlemen: I have this day appointed Frank W. Hazelbaker,

of Dillon, Montana to the Railroad and Public Service Commission *for the unexpired term of John E. Henry, resigned.*"

The second writing was delivered and filed shortly after the above-quoted one and proclaims and declares:

"Gentlemen: I have this day appointed Frank W. Hazelbaker, of Dillon, Montana, to the Railroad and Public Service Commission *until his successor shall have been elected and qualified under the law.*"

In 1907, the Tenth Legislative Assembly of the State of Montana by enactment of Chapter 37, Laws of 1907, created and established the board of railroad commissioners of the State of Montana to consist of three members and provided for the election of such members and for the filling of any vacancy occurring in the board. The first section of Chapter 37, Laws of 1907 (now sec. 72-101, R. C. M. 1947), in part provides:

"Any vacancy occurring in the board shall be filled by appointment by the governor, and such appointee shall hold office until the next general election, and until his successor is elected and qualified. At the biennial election following the occurrence of any vacancy in the board, there shall be elected one member to fill out the unexpired term for which such vacancy exists."

The above simple language is clear, direct, certain and easily understood.

It means that the governor's appointee shall hold office only until his successor, to be elected at "the next general election," shall have qualified for the office.

According to the proclamation issued by the Governor on September 1, 1954, "the next general election" will be held on Tuesday, the second day of November, A. D., 1954.

When the election is held it will require some additional time for the officials to count, tabulate and canvass the votes and to issue certificates of election to the successful candidates. This the legislature had in mind when it provided that the governor's temporary or "stop-gap" appointee shall be allowed to hold the office "until the next general election, and until his successor is elected and qualified." Sec. 72-101.

The law is plain that at the coming biennial election to be held November 2, 1954, "there shall be elected one member to fill out the unexpired term" of John E. Henry who resigned and left his office without an incumbent.

On October 4, 1954, the chairman of the Democratic State Central Committee and the chairman of the Republican State Central Committee each issued a call for a nominating convention to be held by his particular party on October 9, 1954, for the purpose, *inter alia*, of nominating a party candidate to fill the unexpired term on the Montana railroad commission occasioned by the resignation from said commission of John E. Henry. The calls were issued pursuant to the provisions of section 72-101, and Chapter 8, Title 23, of the Revised Codes of Montana of 1947.

On October 5, 1954, said calls for the nominating convention of each of such political parties were duly published in The Independent Record, a daily newspaper of general circulation, published at the seat of government in Helena, Montana.

On October 6, 1954, W. A. Bell, a resident of Lewis and Clark County, residing at 912 Stuart Street in the City of Helena, a taxpayer on real and personal property in said county and a duly qualified elector in said county, presented himself at the office of the county clerk and recorder of said county and applied for an absent voter's ballot to enable him to cast in said county of Lewis and Clark, an absent voter's ballot for the next general election to be held on November 2, 1954.

At the time Bell so presented himself in the office of the county clerk and recorder and applied for an absent voter's ballot, none of the official ballots for said general election to be held November 2, 1954, had been delivered to said county clerk and recorder or to her office and none of such ballots were delivered to said office by the printer or anyone else prior to October 13, 1954, and no such official ballots were available to nor were they voted by any of the qualified electors of Lewis and Clark County prior to October 13, 1954.

On October 6, 1954, and subsequent to making his application

for an absent voter's ballot, W. A. Bell, as plaintiff, filed in the district court of the first judicial district of the State of Montana, in and for the county of Lewis and Clark, a complaint in an action in equity numbered 24643, wherein he sought an order and decree requiring the defendant secretary of state to show cause on a day certain why he should not be restrained and enjoined from certifying any nominees for the office of member of the board of railroad commissioners for the unexpired term of John E. Henry, resigned, to the various county clerks and recorders of the State of Montana and further that pending the hearing on such order to show cause the defendant Sam W. Mitchell as secretary of state be so restrained and enjoined.

In his complaint the plaintiff Bell, *inter alia,* alleges:

That ballots for the next general election have been printed or that they are being printed under the supervision of the various county clerks and recorders of the state;

That numerous voters have filed and made their application for absent voter's ballots to vote at such general election, and that applications have been filed with various county clerks and recorders in the state and will continue to be filed daily; that in the various counties, ballots have been printed and mailed to such voters who are entitled to vote at the next general election and that the process of mailing and voting such absent voter's ballots will continue daily until soon before the general election;

That pursuant to the opinion of the attorney general of the State of Montana, the officers of the Democratic party and the Republican party have called conventions to assemble on October 9, 1954, the Democratic party at Great Falls and the Republican party at Helena, to select nominees for the office of railroad commissioner for the unexpired term of John E. Henry, resigned;

That upon receipt of the names of the nominees for such office as certified by the officers of said two political parties after the holding of such conventions, the defendant secretary of state will promptly certify to the various county clerks and recorders of the State of Montana the nominees so certified by the respective officers of said political party conventions;

That there is no vacancy at this time to be filled by the electors of the State of Montana;

That no proclamation calling a special election to elect a successor to said John E. Henry has been called or proclaimed by the duly constituted authority under the Constitution and statutes of the State of Montana;

That pursuant to the statutes of this state all the voters who have cast absent voter's ballots, or will cast them, within the period between October 6, 1954, and the time necessary to receive the certificates of nomination and their being certified to the several county clerks and recorders of the state and the preparation of stickers or special ballots will be deprived of their right to express their choice for such nominees;

That the time has long since expired within which the defendant secretary of state may certify nominees to the various county clerks and recorders of the state as provided by section 23-809 of the Revised Codes of 1947, and that the secretary of state is without power, right or authority to certify any further nominees by reason of the lapse of time as therein provided;

That although certain sections of the Codes of Montana appear to provide for nominees to be certified to the secretary of state by various political conventions, said sections were and are of no further force and effect as same were repealed by the people of the State of Montana under what is known as the Direct Primary Law;

That unless the defendant secretary of state is restrained and enjoined he will proceed to certify the nominees of the Democratic state convention and of the Republican state convention to the county clerks and recorders throughout the state and that the plaintiff W. A. Bell and all others similarly situated are without any adequate remedy at law by reason of the foregoing facts herein alleged as set forth and the laws of the State of Montana in such cases made and provided.

On October 6, 1954, and upon the filing of the said complaint of W. A. Bell, the district court of Lewis and Clark County and the Honorable George W. Padbury, Jr., district judge presiding,

made and caused to be served upon the defendant secretary of state an order requiring the defendant to appear before said court on October 7, 1954, "to show cause, if any he has, why he should not be restrained from certifying any nominees for the office of the Board of Railroad Commissioners of the State of Montana for the unexpired term of John E. Henry to the various County Clerks and Recorders of the State of Montana and that pending the hearing on said Order To Show Cause the defendant Sam W. Mitchell, Secretary of State of the State of Montana, be so restrained and enjoined."

On October 7, 1954, the attorney general of the State of Montana, appearing for and on behalf of the defendant Sam W. Mitchell, secretary of state of the State of Montana, interposed a motion to quash the restraining order and the order to show cause so issued out of said district court and also demurred to the plaintiff's complaint on the following three grounds: (1) That the complaint fails to state sufficient facts to show that the plaintiff W. A. Bell is entitled to any relief; (2) that the district court is without jurisdiction of the subject-matter of the action, and (3) that it appears upon the face of the complaint that the plaintiff's only interest in this matter and action is as a taxpayer and prospective absentee voter, neither of which interest is sufficient to entitle him to maintain the action.

The issues presented by the defendant's motion to quash and by his demurrer were argued and briefed by counsel for the respective parties. Thereafter, at about 11:50 o'clock a. m., on October 9th, said district court made and caused to be entered an order overruling and disallowing defendant's demurrer and his motion to quash and giving defendant five days to further plead.

At the time the above order was made and entered neither the Republican state convention, noticed and called to convene in Helena at 2:00 o'clock p. m. on October 9, 1954, nor the Democratic state convention to be held in Great Falls on the same date, had nominated or selected any candidate or nominee to fill the unexpired term on the Montana railroad commission

of John E. Henry, resigned, and it was not until some hours after the making and entering of the district court's order that each party convention chose its candidate and nominee for such office.

On October 11 at about 11:45 o'clock a. m. the relator Sam W. Mitchell, secretary of state, filed in the office of the clerk of this court his application for a writ to be directed against the district court of the first judicial district of the State of Montana, in and for the County of Lewis and Clark, and the Honorable George W. Padbury, Jr., a judge presiding therein, respondents, requiring: (1) That they desist from any further proceedings in said district court equity suit number 24643; (2) that they vacate and annul the aforesaid order restraining the relator Sam W. Mitchell as secretary of state from certifying nominees for the office of member of the board of railroad commissioner of the State of Montana for the unexpired term of John E. Henry, resigned, and (3) for such other relief as is just.

Respondents contend that the provisions of sec. 23-809 and of sec. 23-807 as amended by Chapter 160, Laws of 1949, pp. 350, 351, prohibit the certification of the candidates nominated by the party conventions held October 9th and particularly that such provisions deny to the secretary of state the authority to certify such nominees to the various county clerks of the state.

Section 23-807 as amended by Chapter 160, Laws of 1949, has no application whatever herein. Its concluding clause expressly states that "the provisions of this section shall not be held to apply to nominations * * * to fill vacancies."

We are also of the opinion that the provisions of sec. 23-809, a general statute, are in conflict with the specific provisions of sec. 72-101, a special statute which applies specifically and exclusively to the filling of vacancies occurring in the board of railroad commissioners of the State of Montana. To hold otherwise would utterly defeat the express intent of the legislature as expressed in sec. 72-101 and would render idle and wholly ineffective the nominations for the office of railroad commissioner made and certified by both the Republican state party

convention held in Helena on October 9th and the Democratic state party convention held in Great Falls on the same date.

The electors of this state under the provisions of sec. 72-101 have the right to vote at the next general election to be held November 2, 1954, on the two candidates chosen by such political party conventions and by their votes to there elect one member to fill out the unexpired term of John E. Henry, resigned.

The office of railroad commissioner is one that is required to be filled by the voters at the general elections held biennially, and it is only when a vacancy occurs that a temporary appointment is authorized to stop the gap and permit the board to continue to function with three members until the electors are presented with their first opportunity to select the appointee's successor which opportunity is afforded under the law at the next general election held following the occurrence of the vacancy.

There would be no object in attempting to elect a person to the office of commissioner at any other time or place than at a general election for the reason that when a vacancy does occur it is promptly filled by temporary appointment of the governor. This appointee then holds the office until the general election next following his appointment and until his duly elected successor has had an opportunity to qualify. There is and can be no special election to elect the appointee's successor under the provisions of R. C. M. 1947, sec. 72-101, for the result of a special election could oust the governor's appointee prior to the next general election held next after such appointee's appointment and qualification.

In the instant case the vacancy which occurred when Commissioner Henry resigned effective September 30, 1954, came more than two months after the holding of the state-wide primary nominating election of July 20, 1954, but prior to the general election, making it utterly impossible for candidates for the office to comply with the primary nominating election law and making it necessary to resort to the more or less imperfect nom-

inating procedure provided in Chapter 8 of Title 23, secs. 23-801 to 23-820, of the Revised Codes of Montana of 1947.

It is apparent that some of the provisions of the chapter are not only uncertain and conflicting but also impossible of application without destroying the right of the people to select their candidates for elective public offices by and through their duly and regularly constituted political party organizations and conventions and especially in an emergency such as is here presented.

In construing the provisions of sec. 23-809 and as an aid in their just application, the maxims of jurisprudence hereinafter set forth are to be kept in mind, viz.:

"Interpretation must be reasonable." R. C. M. 1947, sec. 49-134.

"An interpretation which gives effect is preferred to one which makes void." Sec. 49-133.

"The law never requires impossibilities." Sec. 49-123.

"The law neither does nor requires idle acts." Sec. 49-124.

"When the reason of a rule ceases, so should the rule itself." Sec. 49-102.

A just application of the above-quoted maxims of jurisprudence in connection with our interpretation of the provisions of sec. 23-809 convinces us that the time limitations therein prescribed can have no application to an election to fill a vacancy created by the resignation of a regularly elected railroad commissioner where, as here, such office holder defers and withholds the effective date of his resignation until but 32 days remain between such effective date and the day of the general election.

"All political power is vested in and derived from the people; all government of right originates with the people; is founded upon their will only, and is instituted solely for the good of the whole." Montana Constitution, Art. III, sec. 1.

"The people of the state have the sole and exclusive right of governing themselves, as a free, sovereign, and independent state * * *." Const. Art. III, sec. 2.

"All elections shall be free and open, and no power, civil or

military, shall at any time interfere to prevent the free exercise of the right of suffrage." Const. Art. III, sec. 5.

R. C. M. 1947, sec. 23-801, in part provides: "Any convention * * * held for the purpose of making nominations to public office, or the number of electors required in this chapter, may nominate candidates for public office to be filled by election in the state. A convention or primary meeting within the meaning of this chapter is an organized assemblage of electors or delegates representing a political party or principle * * *."

R. C. M. 1947, sec. 23-802, provides the manner in which all nominations made by such convention must be certified, directing that such certificates "be delivered by the secretary or the president of such convention * * * to the secretary of the state or to the county clerk, as in this chapter required."

R. C. M. 1947, sec. 23-803, in part provides: "Certificates of nomination of candidates for offices to be filled by the electors of the entire state * * * must be filed with the secretary of state. * * *"

R. C. M. 1947, sec. 23-806, in part provides: "The secretary of state * * * must cause to be preserved * * * for one year all certificates of nomination filed under the provisions of this chapter. All such certificates must be open to public inspection under proper regulations to be made by the officers with whom the same are filed."

The nominations to be certified by the Democratic state convention and by the Republican state convention held on October 9, 1954, are nominations to fill a vacancy occurring in the board after the temporary or "stop-gap" appointment by the Governor, but it must be remembered that the express statute which governs when the vacancy is in the board of railroad commissioners specifically provides that, "at the biennial election following the occurrence of any vacancy in the board, there shall be elected one member to fill out the unexpired term for which such vacancy exists." R. C. M. 1947, sec. 72-101.

Council for respondents assert that under the Railroad Commission Act, R. C. M. 1947, secs. 72-101 to 72-168, no vacancy

exists to be filled at the ensuing general election. Their contention is that when the governor has acted by appointment, no vacancy exists to be filled at a general election and that under such circumstances vacancy will not occur until expiration of the whole residue of the resigned officer's original term. We find no merit in this contention.

In the recent case of Brown v. Georgetta, 70 Nev. 500, 275 Pac. (2d) 376, by the Supreme Court of Nevada, the respondent there unsuccessfully contended for a similar construction which interpretation the Nevada Court declined to adopt, saying: "Under his [respondent's] construction, however, no vacancy ever could be filled by election, since each appointment of necessity would carry over throughout the entire unexpired balance of the term; the appointment in no sense could be regarded as temporary; the legislature could not be said to have directed the filling of vacancies by election but on the contrary must be regarded as having directed that they shall not be so filled. We can conceive of no more direct opposition to the clear intent of the Constitution. * * *

"It is next contended by respondent that, irrespective of the form and nature of any of the statutes on the subject, there is no 'next' election for filling any vacancies until the general election of 1956. This contention is predicated upon the proposition that because the county clerk, complying with statutory requirements of the absent voters' law, secs. 2553-2567, N. C. L. 1929, has already mailed out several hundred ballots to absent voters, the 1954 election is already under way; that the actual personal casting of ballots on November 2, 1954 is merely a step in such election; that to change the ballot at this time by adding the names of the two candidates to be elected November 2, 1954 to fill Senator McCarran's unexpired term will permit personally voting electors to vote for such candidates while the electors receiving the absent voters' ballots (some of which have already been returned) are not so permitted, and that the delay in reprinting the ballots will prevent other eligible absent voters from voting at all by reason of their long distance from their

voting places. It is contended that an election held under such conditions would be void.

"Perhaps no statute on our books has been subject to more amendments than our election laws. That the legislature has constantly sought improvement therein cannot be doubted. That any member of the senate or assembly has ever felt that perfection in the election laws could be achieved, no one would have the optimism to assert. Prior to the absent voters' law of 1921, this state had no statute providing for an absent voter's ballot. Yet prior to the effective date of that act many persons 'by reason of the nature of their vocation or business or other causes (were) unavoidably absent from the polls in the county of their residence on the day of election.' (We have quoted the purpose of the act as gleaned from its title.) Stats. 1921, p. 153, as amended Stats. 1925, p. 39. * * * The answer to the contention, in short, is that voting by absent voters' ballot is a privilege, not a right. Under our statutes providing for late nominations under certain conditions it is inevitable that circumstances will arise whereunder ballots containing the names of late nominees will not reach absent voters living in distant parts of the world. If the names of the nominees are otherwise lawfully placed upon the ballots personally voted at the polls, it could not reasonably be contended that the election for the particular office should be declared void."

In State ex inf. Barrett ex rel. Shumard v. McClure, 299 Mo. 688, 253 S. W. 743, 744, it is said: "Originally special elections were provided for to fill vacancies, so as to cut short the tenure of appointees. Apparently the expense and trouble of having special elections to fill vacancies caused the Legislature in 1879 to provide for vacancies to be filled by appointment until the next succeeding general election. This shows that the legislative policy of the state has been to fill the vacancy for an elective office by election as soon as practicable after the vacancy occurs. * * *"

The office of secretary of state is a public office provided for in Montana's Constitution. The duties of this office are pre-

scribed by both the Constitution and statutes of the state. Constitution, Art. VII, secs. 1, 2, 17, and 18; R. C. M. 1947, secs. 23-802, 23-803, 23-806, 23-807, 23-808, 23-809, 23-811, 23-910, 23-912, 23-913, 23-916, 23-917, 23-922, 23-924, 23-1814, 23-1815, 23-1818, 25-102, 37-101 to 37-108, 43-208, 44-102, 44-123, 50-408, 56-110 to 56-113, 59-304, 82-2201 to 82-2211.

Section 93-4203 of the Revised Codes of Montana of 1947 expressly provides that an injunction cannot be granted to prevent the execution of a public statute, by officers of the law, for the public benefit nor to prevent the exercise of a public office, in a lawful manner, by the person in possession.

In 4 Bancroft's Code Practice and Remedies, sec. 3477, pp. 4548, 4549, it is said: "It is a general rule that an action will not lie to enjoin the calling and holding of an election, or the preliminary acts necessary thereto, or to enjoin * * * transmitting the records of the election to the proper authorities, or the filing thereof, whether the election is provided for by a valid law and the forms prescribed have been complied with, or it is illegal. The refusal to act is placed upon different grounds. Some courts decline to entertain jurisdiction upon the theory that no rights of property are involved, and that there is a plain remedy at law, usually by proceeding in the nature of quo warranto or contest, while others recognize the doctrine that courts ought not to interfere from motives of public policy, or hold that to grant an injunction against an election provided for by law would be to prevent the execution of a public statute for the public benefit, in violation of the enactment precluding an injunction in such case. A private citizen who does not show that he will be injured in any property or civil right cannot invoke equitable cognizance of a purely political question."

The complaint which the plaintiff Bell filed in the district court shows that his only interest is as a taxpaying, private citizen and prospective absentee voter. It wholly fails to show that he will be injured in any property or civil right. Thus does Bell's own pleading show him to be without standing or capacity to invoke equitable cognizance of a purely political question or

to be granted the injunctive order which required the secretary of state to refrain from performing his official duties for the public benefit. The injunctive order was granted in violation of the express mandate set forth in subdivisions 4 and 6 of sec. 93-4203, R. C. M. 1947, and therefore in excess of the jurisdiction conferred upon the trial court.

In 2 High on Injunctions, 4th Ed., sec. 1312 at page 1325, it is said: ''No principle of the law of injunctions, and perhaps no doctrine of equity jurisprudence is more definitely fixed or more clearly established than that courts of equity will not interfere by injunction to determine questions concerning the appointment or election of public officers or their title to office, such questions being of a purely legal nature, and cognizable only by courts of law.''

In 28 Am. Jur., Injunctions, secs. 162, 163, pp. 352, 353, it is said: ''Equity is conversant only with matters of property and the maintenance of civil rights. It will not interfere by injunction with the duties of any department of the government except under special circumstances and when necessary to the protection of property or other rights against irreparable injury. * * * Nor will it ordinarily assume jurisdiction to prevent public officials or servants from doing their duty as required by law, or performing acts required by law to be performed which are not in excess of their authority, unless such acts are done in such a manner as to inflict irremediable loss or injury upon innocent individuals. Equity will not attempt by injunction to substitute its own discretion for that of such officials in matters belonging to the proper jurisdiction of the latter. Where a public officer essays to exercise the jurisdiction conferred upon him, his errors, although subject to subsequent correction, cannot be enjoined as an arbitrary exercise of his authority. * * *

''* * * Public officers or boards will not be restrained from acting in the fulfilment of their duties as such on the mere supposition that they will act wrongfully, or will not follow the law.

''Persons or corporations seeking to restrain acts of public corporations or officials must have sufficient title or interest

to enable them to maintain the suit. Suits for the protection of public rights are ordinarily brought by the attorney general. * * * Ordinarily private citizens or corporations must possess something more than a common concern for obedience to law before they will be permitted to maintain injunction suits against public officers. * * * As a general rule, private citizens may not restrain official acts when they fail to allege and prove damage to themselves different in character from that sustained by the public generally.''

Again in secs. 167 and 168, pp. 357, 358: ''Equity will not interfere by injunction in matters of a purely political nature, and so will not ordinarily assume jurisdiction by injunction in controversies relating to public office. The right or title to office is not a matter which an equity court will determine in injunction proceedings, nor will it, as a rule, grant injunctive relief to prevent appointments to, assumption of, or removals from office. * * *

''The judiciary may not encroach upon other departments of the government nor will it, as a rule, interfere with performance by them of their constitutional functions. And so, the courts cannot by injunctive process control or direct a head of an executive department in the discharge of any constitutional executive duty involving the exercise of judgment or discretion. The prevention of irreparable injury and of a multiplicity of suits cannot be invoked as grounds for equitable relief in such cases.''

In 43 C. J. S., Injunctions, sec. 115, pages 642, 644, it is said: ''As a general rule, a court of equity is without jurisdiction to control by injunction election officers in the exercise of their statutory authority with respect to political elections, at least at the suit of a taxpayer who shows no special injury peculiar to himself, and this rule is applicable alike to general and primary elections. An injunction will not issue for the purpose of directing or controlling the mode in, or of determining the rules of law in pursuance of, which an election shall be held. * * *

''An injunction does not lie to restrain the holding of a public

election authorized by law and properly called. Mere conjectures as to the difficulties which may arise as a result of the election do not furnish justification for a restraint of the proposed election.

"Although there is authority to the contrary, the general rule is that an injunction will not issue to prevent the holding of an election whether or not the election is illegal, and that this is so whether the election relates to the filling of public office or other matters * * *."

In 67 C. J. S., Officers, sec. 53, pages 217, 218, it is said: "Since it is the general policy of the law to fill vacancies in elective offices, by an election, as soon as practicable after the vacancy occurs, it is frequently provided that in the case of vacancy in elective offices the appointment shall be for the period until there can be an election of an officer who will hold for the balance of the unexpired term, and such a provision is mandatory. * * * When it is provided that such an appointment by the executive shall expire when a successor shall have been 'elected and qualified,' the appointee holds only until the next general election, and the governor cannot appoint for the unexpired term. * * * One elected to fill a vacancy for the unexpired term is entitled to enter on the duties of his office immediately after election and qualification, and it is the duty of one appointed to fill a vacancy until an election thereupon to surrender it to his successor."

It should be said in passing that those who have applied for and obtained absent voters' ballots are not without right to vote for a successor to the office made vacant by the resignation of Henry.

They may, if the matter is of sufficient importance to them, appear at the polls on election day and demand a new ballot all as provided in R. C. M. 1947, secs. 23-1315 and 23-1316.

It is ordered that a writ of prohibition in due form be issued ▮ directing that the respondents herein vacate all that certain restraining and injunctive order of October 6, 1954, by them granted against the secretary of state of the State of Montana

and further directing respondents to desist and refrain absolutely from any further proceedings in said equity suit No. 24643 wherein W. A. Bell is plaintiff. Let the writ issue forthwith.

MR. JUSTICES BOTTOMLY and ANGSTMAN concur.

MR. JUSTICE FREEBOURN:

I agree with the result reached in the foregoing majority opinion for the following reasons.

The law provides that: "Any vacancy occurring in the board [of railroad and public service commissioners] shall be filled by appointment by the governor, and such appointee shall hold office until the next general election, and until his successor is elected and qualified. At the biennial election following the occurrence of any vacancy in the board, there shall be elected one member to fill out the unexpired term for which such vacancy exists." R. C. M. 1947, sec. 72-101.

On September 25, 1954, John Henry, a regularly elected member of the board of railroad commissioners, tendered his resignation to the governor, to take effect September 30, 1954. Pursuant to section 72-101, supra, the governor, on October 1, 1954, filled the Henry vacancy by appointment.

The Montana Constitution, Article III, sec. 1, provides: "All political power is vested in and derived from the people; all government of right originates with the people; is founded upon their will only, and is instituted solely for the good of the whole."

On October 9, 1954, the people of Montana, through their elected delegates in convention assembled, nominated two persons to be candidates at the November 2, 1954, general election, which is the biennial election following the occurrence of the vacancy created by Henry's resignation. The Democrats nominated Paul Smith, a former member of the board of railroad and public service commissioners, and the Republicans nominated Frank Hazelbaker, the governor's appointee to the Henry vacancy.

The Montana Constitution, Article III, sec. 5, provides: "All

elections shall be free and open, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage.''

Under the circumstances here, and the statute and provisions of the Constitution cited, no court has the right to prevent the people from voting for their choice of nominees to fill the vacancy now existing on the board of railroad and public service commissioners; and no fair-minded person, knowing the facts and the law, can offer any good reason why the people should not exercise their right to so vote.

MR. JUSTICE ANDERSON:

I agree with the result reached in the foregoing opinions but not with all that is said in them.