STATE ex rel. JOSEPH L. ROEDER, DOING BUSINESS UNDER THE NAME AND STYLE OF ROEDER TEXACO, RELATOR AND RESPONDENT, v. THE STATE BOARD OF EQUALIZATION OF THE STATE OF MONTANA, ETC., DEFENDANTS AND APPELLANTS.

No. 9568.
Submitted January 16, 1958. Decided May 2, 1958.
324 Pac. (2d) 1057.

394

Forrest H. Anderson, Atty. Gen., H. O. Vralsted, Sp. Atty. Gen., for appellants.

H. O. Vralsted, Sp. Atty. Gen., argued orally for appellants. Floyd O. Small, Clayton R. Herron, Helena, for respondent. Clayton R. Herron, Helena, argued orally for respondent.

THE HON. W. R. FLACHSENHAR, District Judge (sitting in place of MR. JUSTICE BOTTOMLY).

The defendants, State Board of Equalization and members thereof, have appealed from a judgment in mandamus proceedings, directing the defendant Board to allow a claim for a gasoline refund in favor of the relator.

Chronology

May 19, 1953, relator purchased 7,200 gallons of gasoline, paying the required state highway license tax, and placed the same in a storage tank in Wolf Creek, Montana.

June 4, relator lost 6,070 gallons of gasoline during a severe flood, which tipped the gasoline storage tank, causing a pipe to break, and let the gasoline escape.

June 12, relator's agent attended the gasoline license refund department of the defendant Board to obtain a permit to file a claim for refund of the tax paid and was informed that refunds were not allowable as to gasoline so lost.

November or December, the agent made a second trip to defendant Board relative to a refund and was then told she was too late because of a six-month statute of limitations.

October 29, 1954, alternative writ of mandate issued by the district court returnable November 9, 1954.

January 17, 1955, cause came on for trial.

January 18, peremptory writ of mandate ordering defendant Board to allow claim for refund to relator for $356.92, with interest from June 12, 1953, to date of approval, and for costs to petitioner, plus $400 as reasonable attorney's fees.

In support of its writ of mandate the district court made findings of fact which may be summarized as follows:

The relator and his wife, Mr. and Mrs. Roeder, have a bulk sales plant at Wolf Creek, Montana. In May, 1953, they purchased certain gasoline and kept sort of a perpetual inventory of the amount of gasoline and fuel oil in their bulk sales tank. At the time of the flood on June 4, 1953, there were approximately 6,070 gallons of gasoline in one of the tanks which had a capacity of 12,000 gallons. As a result of the flood this tank tipped over and all of the gasoline was lost.

Shortly thereafter, and within six months, Mrs. Roeder went to the defendant Board of Equalization to see about getting a tax refund on the gasoline which had been lost. She talked with Mrs. Florence McCarthy who at that time was in charge of the gasoline tax refund division. Mrs. McCarthy advised the relator's wife that she did not have a proper invoice upon which to base her claim for a tax refund. She also told her she would not get a refund anyway because, she said, Mr. Simon, a member of the Board of Equalization, told her they were not going to pay tax refunds on any gasoline that had been lost.

The court held that the six-month statute of limitations was thus waived and tolled.

R.C.M. 1947, section 49-124, reads: "The law neither does nor requires idle acts." Sherlock v. Vinson, 90 Mont. 235, 239, 1 Pac. (2d) 71, 72; State ex rel Mitchell v. District Court, 128 Mont. 325, 335, 275 Pac. (2d) 642, 647; Davis (Table Mtn. Farms) v. Burton, 128 Mont. 434, 443, 278 Pac. (2d) 213, 218.

The court held that the relator was entitled to recover the tax paid together with costs and interest.

Only three witnesses were called at the trial. Mrs. Roeder, the wife of the relator, kept the books of the business and testified that her husband was doing business as the Roeder Texaco Station in Wolf Creek; that on May 19, 1953, they purchased 7,200 gallons of Fire Chief gasoline; that the state license gasoline tax was paid thereon and the gasoline delivered to the plant and placed in one of their storage tanks; that the flood on June 14, 1953, caused the loss of the gasoline still remaining in the tank and shortly thereafter she went to the office of the defendant Board, where she was directed to Mrs. Florence McCarthy, and the following conversation took place:

"Q. What occurred as you were talking to her? A. I believe I took my invoices out and showed her and said we lost this gas and we would like to get our tax back. She looked at it and talked about the flood and she said: 'You lost it in the flood' or something to that effect, and she said 'I'm sorry but you can't get a tax refund for that purpose.' So I took her word for it and left.

"Q. What was your purpose in going out there, when you went to the Board in the first place? A. I went out to get that tax. I figured we took loss enough, losing the gas and the tax besides. I thought we could at least get something back; it would help a lot.

"Q. You had the invoices with you and were you willing

to do anything necessary to make application? A. I thought I had everything I needed to get our refund.

"Q. When you talked to this lady, did she give you any forms to fill out? A. She said 'No, they aren't paying tax on gas lost in floods,' or 'in that way,' or something to that effect anyway.

"Q. This was in the Montana Board of Equalization offices, wasn't it? A. Yes.

"Q. And you relied on that, you thought the claim wasn't allowable? A. Yes.

"Q. What next took place in relation to your claim? A. Well, according to the figures, it must have been about six months and two weeks later, I went back. I believe I saw in the paper where some Bice Company got back tax on some gas they had lost and I thought if they got it why couldn't we get it back. Different people said: 'You should get it.' I went back again and talked to this lady and she said, 'Just a minute!' and she called to this man in the outer office and he came in and they checked the invoice, looked it over and he said: 'Well, fix her up; fill out the form.' She said 'Have you got your permit,' she said 'you've got to have a permit.' She said 'I'll help you,' and she started writing out the form and when she got to the date she said: 'Oh, I'm sorry, you're two weeks too late.'

"Q. She informed you it was too late to file a claim at that time? A. Yes, and I left.

"Q. You said she started to fill out a form for you? A. Yes, and when she got to the date she said: 'The date has expired,' I believe six months or something like that.

"Q. What did she do with the form then? A. I don't know what she did with it; left it on the desk."

Mr. Roeder was called on his own behalf and as an adverse witness by the defendants, but he merely corroborated his wife's testimony as to his business and loss of gasoline in the flood.

Mrs. McCarthy was called as an adverse witness by the

398

relator and also by the defendants, and testified in part as follows:

"Q. Were you working for the State Board of Equalization in 1953? A. That's right. * * *

"Q. In what capacity were you working then? A. Supervisor of the refund department at that time.

"Q. That was the gasoline-tax refund department? A. That is right.

"Q. What did that job consist of? A. Supervising the work, more or less general supervision of anybody working there, and any extra work which had to be done, I did it. * * *

"Q. No, I mean when a claim comes into the State Board of Equalization, a claim against the gas-tax refund, what happens to it then? A. Under ordinary circumstances, if they are mailed in, they come into the mail room first and the date is stamped on them. That is downstairs. Then they come up to our office, then they are sorted into different counties according to number and permit number; then they are what you call processed. Their invoices are checked to see that they are correct. Then after that work the reason for applying for the refund is checked by another person. Then they are put through the usual procedure to pay. They are listed, about 100 in a group is listed on a sheet with the names, numbers and amounts. Then this list and one copy of the refund claim is presented to the auditor's office and they make up the warrants and mail out the warrants for the claims.

"Q. Who finally determines whether their names should be on the list or not? A. Do you mean who should get the permit? * * *

"Q. When the claim itself comes in, who determines whether the claim should be allowed and paid? A. Under ordinary circumstances, it is the one that checks the work. * * *

"Q. Now you have heard Mrs. Roeder testify here today, haven't you? A. Yes, I have.

"Q. Do you recall her visiting you, or the Board, some time during June 1953? A. I recall her visit but to me it was later than June.

"Q. When would you say it was? A. Well, I thought it was about the last of July or maybe the first of August.

"Q. At any rate, was it within six months after the 19th day of May? A. Her first visit?

"Q. Yes. A. Oh, yes. * * *

"Q. Now when Mrs. Roeder left your office on the occasion of that first visit, did you or did you not know whether she was going to get a refund? A. I knew she wouldn't get it because it was up to me to disallow it. I would have disallowed it, if she had put it in. If she had the proper invoice and insisted, I would have made out the claim, put it through, and disallowed it.

"Q. Your advice to her on the first visit was she couldn't receive a refund? A. That she couldn't receive a refund, and that she didn't have the proper invoice anyway; she would have two counts against her. * * *

"The Court: Anyway you advised her you weren't paying refunds on gasoline lost or destroyed? A. That's right.

"Q. Your advice to her was that she wasn't going to get a refund? A. She couldn't get it.

"Q. That she wouldn't get it? A. That she couldn't get it, yes."

There is ample testimony in this case to support the findings of the district judge. R.C.M. 1947, section 84-1818, is the law in Montana providing for refund of tax paid on gasoline when not used upon our state highways. The defendant Board contends that they cannot make a refund for gasoline lost under this law. This contention was adversely ruled on by this court in State ex rel. Great Northern Ry. Co. v. State Board of Equalization, 121 Mont. 583, 194 Pac. (2d) 627, and again in the same case on a second appeal, State ex rel.

Great Northern Ry. Co. v. State Board of Equalization, 126 Mont. 187, 246 Pac. (2d) 220. In that case a Great Northern train was derailed and gasoline upon which the tax had been paid was destroyed. The first case was decided in June 1948, and the second case in May 1952.

The Great Northern case was sent back for amendment of pleadings, and on the second appeal of the same case this court referred to the previous decision on page 188 of 126 Mont., and on page 221 of 246 Pac. (2d) as follows:

"The previous decision of this court that the Great Northern Railway Company was entitled to a refund if other provisions of the law were met has become the law of the case."

The refund law was originally passed in 1927 and has been amended several times by our state legislature. Since the first Great Northern case was decided, the legislature has met in three sessions prior to the loss of gasoline in the instant case. At none of these sessions was the law amended to express disapproval of the judicial interpretation by this court that gasoline lost or destroyed should be included in the provisions for refund of the tax paid thereon. See State ex rel. Rankin v. Madison State Bank, 68 Mont. 342, 349, 218 Pac. 652, 655; and Bottomly v. Ford, 117 Mont. 160, 168, 157 Pac. (2d) 108, 112.

The argument is made that relator never furnished the Board nor the court with the proper invoice which was required by section 84-1818, supra. This issue was thoroughly discussed in State ex rel. Great Northern Ry. Co. v. State Board of Equalization, supra, wherein the court, at page 191 of 126 Mont., at page 222 of 246 Pac. (2d), said:

"The claim for refund could not be accompanied by an original invoice issued on March 19, 1946, because the claimant could not anticipate that the gasoline would be spilled by a derailment and therefore could not make the same preparation for claim for refund that could be made by a claimant in the ordinary course of business who knew that the gaso-

line purchased was to be used for purposes for which he was entitled to claim a refund."

And again at page 192 of 126 Mont. and 222 of 246 Pac. (2d), the court said:

"It is entirely proper that the State Board of Equalization require that information necessary to sufficiently identify the claim for refund shall be furnished upon forms provided and prescribed by the board and under a procedure that is convenient to it. However, where it has been decided that a claimant is entitled to a refund but the claim is such that it cannot be regularly itemized on the prescribed forms, the board cannot set up the failure to comply with technical portions of its regulations or of the statute as a reason for denying the claim. If that were true, it would give the board authority to deny valid claims by establishing regulations or providing forms with which claimants could not possibly comply. That is not the intent of the statute nor is it within the administrative powers of the board."

The district court allowed relator $400 attorneys' fees, which included this appeal, and we affirm this allowance together with costs.

Having examined the specifications of error tendered by the defendants and finding no reversible error the judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICE ANGSTMAN, concur.

MR. JUSTICE CASTLES:

I dissent.

MR. JUSTICE ADAIR: (dissenting)

In State ex rel. Great Northern Ry. Co. v. State Board of Equalization, Appeal No. 8766, 121 Mont. 583, 594, 194 Pac. (2d) 627, 633, decided by a divided court, I concurred in the dissenting opinion of Mr. Justice Choate wherein it was cor-

rectly stated that ''If claims of this sort are allowed there is no way whereby the inspectors for the board can determine the extent and amount of such losses. * * * If dealers desire to protect themselves against such losses they may do so by securing contracts of insurance but the State of Montana has not insured them against the loss of gasoline where they have paid the taxes.'' In the dissent the case of Barnsdall Refining Corporation v. Ford, 194 Ark. 658, 109 S.W. (2d) 151, was also cited, holding that a gasoline manufacturer or dealer was not entitled to credit on taxes due on gasoline shipments into the state for the amount of taxes previously paid on gasoline destroyed by it by loss in storage or by fire.

By a three to two decision, in Appeal No. 8766, supra, the district court was reversed and the cause remanded with directions. Thereafter on a second appeal in the same case, viz.: State ex rel. Great Northern Ry. Co. v. State Board of Equalization, Appeal No. 9056, 126 Mont. 187, 246 Pac. (2d) 220, I was required to recognize and yield to the inflexible rule that the majority opinion on the first appeal had become the law of that particular case and was controlling in both the district court and in this court so that further dissent in that particular action would be both futile and improper practice, the rule being as stated in the opinion on the second appeal, No. 9056, viz.:

''The previous decision of this court that the Great Northern Railway Company was entitled to a refund if other provisions of the law were met has become the law of the case. 'It is an inflexible rule that our decision on a former appeal, whether right or wrong, is binding in the same action.' Libin v. Huffine, 124 Mont. at pages 188, 189, 246 Pac. (2d) at page 221.

In my opinion this court's decisions in appeals Nos. 8766 and 9056, supra, as well as the majority opinion on the appeal in the instant case are wrong and contrary to the express

statutes here controlling. These opinions will result in much mischief and injustice. Accordingly I dissent to the majority opinion herein as I did in the Great Northern Ry. Co., Appeal No. 8766, supra.