No. 12227

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

LEON OSCAR MEIDINGER,

Defendant and Appellant.

Appeal from:  District Court of the Sixteenth Judicial District,
Honorable Alfred B. Coate, Judge presiding.

Counsel of Record:

For Appellant:

Berger, Anderson, Sinclair and Murphy, Billings,
Montana.
Arnold A. Berger argued, Billings, Montana.

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana.
J. C. Weingartner, Deputy Attorney General, argued,
Helena, Montana.
William J. Krutzfeldt, County Attorney, argued, Miles
City, Montana.

Submitted:  September 18, 1972

Decided: OCT 1 9 1972

Filed:  OCT 1 9 1972

Thomas J. Kearney
Clerk

Mr. Justice John C. Harrison delivered the Opinion of the Court.

This is an appeal by defendant Leon Meidinger from a conviction of first degree burglary in the district court of the sixteenth judicial district, county of Custer.

The facts of the instant case are essentially the same as those in the case of State v. Harris, ____Mont.____, 498 P.2d 1222, 29 St.Rep. 498, where this Court affirmed the first degree burglary conviction of Meidinger's codefendant, Philip Harris.

During the fall months of 1970, Leon Meidinger began frequenting Kelly's Gaslite, a bar in Miles City. Working at the bar was one Lila Williamson, an acquaintance of Meidinger. Meidinger expressed an interest in where the owner of the bar, Earl Kelly, kept his money. At trial, Meidinger testified he had played in a poker game in the basement of Kelly's Gaslite and was aware that considerable cash was involved in the game. In November 1970, Meidinger pursuaded Lila Williamson to obtain a duplicate of her key to the bar and his brother picked up the key for Meidinger.

On December 11, 1970, Lila Williamson contacted a local police officer, Larry Kuchynka, and told him that during the night of December 11, Kelly's Gaslite bar would be burglarized. Kuchynka notified Kelly, the owner, and then proceeded with local police and sheriff's deputies to stake out the bar.

On the night of December 11, 1970, Meidinger and Harris drove from Billings to Miles City in Meidinger's pickup truck. Along the way they stopped and stole some license plates, affixing them to the pickup. Meidinger testified he and Harris did not arrive in Miles City until 2:30 a.m., but the state's evidence indicates Kelly closed the bar at 2:00 a.m., and Harris was seen going

into the bar within fifteen minutes after closing.

Harris entered the front door of the bar, apparently with a key. Upon exiting the bar, Harris was stopped by seven law enforcement officers. When they frisked Harris, the police found a walkie-talkie and a bag full of checks and currency tied with a cord around Harris' neck. At the time of the arrest Harris was ordered to put up his hands, and the arresting officers heard what turned out to be the duplicate key to the bar fall to the pavement.

Following the arrest and search of Harris, the officers went into the Gaslite bar, using the duplicate key, and discovered the safe was open and empty. The dial of the safe had been knocked off and alongside the safe was a hammer.

Later Kelly identified the checks and currency which were found in the bag hanging around Harris' neck when he was apprehended, as having been in the safe.

As the officers came out of the bar following completion of their investigation there, one of them saw the camper pickup parked across the street cater-corner from the Gaslite bar. The officer recognized the truck as belonging to Leon Meidinger, a known personality to law enforcement officers in the area. Upon flashing his flashlight into the truck, one of the officers discovered Meidinger crouched down in the truck. He was ordered to get out and to the officer's surprise a walkie-talkie similar in design and cover to that found on Harris was in Meidinger's possession.

Both Harris and Meidinger alleged they did not arrive in Miles City until 2:30 a.m., but Officer Hom, who recognized the camper pickup, testified he had seen the pickup parked across the street from Kelly's Gaslite approximately at midnight. The

pickup was discovered to have stolen license plates and both defendants admitted stealing the plates at Rosebud, Montana, enroute to Miles City.

Defendant alleges Officer Hom's testimony as to the time he first saw defendant's vehicle was discredited and should not have been allowed. Officer Hom testified he saw the vehicle around midnight and later contradicted that testimony putting the time at 1:15 a.m. Although the statements were contradictory, the fact remains that shortly after 2:00 a.m. Harris went into the Gaslite bar, burglarized it, and was apprehended. Too, Officer Hom testified he had seen the vehicle before the burglary and had made a registration check of the license plates on the vehicle. All of this was a question for the jury and it believed the vehicle was on the street of Miles City, cater-corner from the Kelly's Gaslite bar sometime before the burglary.

Both Harris and Meidinger were arrested and charged with burglary. Each posted bail of $3,750. While awaiting release on bail, they were in the sheriff's office talking to relatives. Both Sheriff Damm and Officer Adrian at that time heard Meidinger say to his brother "I should have known better to pull something like this in my home town."

Meidinger's defense as to why he was in the back of the pickup camper was that he was sleeping and was not aware of the activities taking place until he was awakened and arrested by the Miles City police. An independent hearing on a motion to suppress the evidence found in Meidinger's truck was held prior to trial and after considerable testimony the motion to suppress was denied.

Defendant presents four issues for review:

1. Was the affidavit for the search warrant insufficient?

2. Was the search warrant defective?

3. Was defendant denied a fair trial because:

A. The court improperly waived the exclusionary rule;

B. The opening statement of the state was unethical and prejudicial;

C. Evidence of other crimes was improperly admitted;

D. The Montana doctrine of cumulative error applies;

E. Counsel for defendant Meidinger was ineffective;

F. The prosecution was permitted to demean witnesses for the defense.

4. The jury was improperly instructed.

We find no merit to issue No. 1. Sufficient probable cause for the issuance existed. The following tests of sufficiency set out in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L ed 2d 723, and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L ed 2d 637, are satisfied.

1. Basis of knowledge test. The informants, all police officers, arrested Harris and Meidinger after Harris had burglarized the Gaslite Bar. These informants obtained their knowledge by observing the burglary in progress. The arrests were made after Harris was searched and the fruits of the crime discovered. These officers viewed the walkie-talkie in Meidinger's pickup, after he was arrested.

2. Reliability test. The informants are reliable. The FBI told the Miles City police department that Meidinger and Harris were traveling together and that they were planning to make a "hit". This information alerted the police and the police believed the information to be true. Meidinger and Harris were traveling together and they did in fact make a "hit". The local

law enforcement personnel's information was reliable because they observed the Gaslite bar being "knocked over" and they did arrest Meidinger and Harris after the burglary. The officers observed instruments used in connection with the burglary in the pickup, i.e. the walkie-talkie.

These tests are strengthened by the fact that the search was conducted after the crime had been committed and after defendant was arrested. This is a classic case where law enforcement officials attempted to abide by the mandates and spirit of the law. A search warrant was not even required in this instance. The walkie-talkie and other instrumentalities could have been seized under the "open fields" doctrine enunciated in Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L ed 2d 1067, and adopted by this Court in State v. Perkins, 153 Mont. 361, 457 P.2d 465. Yet, here, the law enforcement personnel to avoid having this evidence tossed out because of a possible illegal search, obtained a search warrant to comply with recent court holdings.

Defendant relies on two leading United States Supreme Court cases Aguilar and Spinelli. The fact situations in those cases are not on all fours with this case. In Aguilar and Spinelli the arrests were made after the search warrant was issued. Here, defendant was already arrested and in the course of the arrest one of the items, the walkie-talkie, was noted after which a search warrant was obtained. Defendant's counsel asks this Court to accept as a fact that the police searched the truck, noted the items later listed in the warrant, and only then did they get the warrant. This was not proven at the time of the hearing to suppress the evidence and we refuse to assume such facts. See: State ex rel. Wilson and Hoffer v. District Court, ____ Mont.

_____, 498 P.2d 1217, 29 St.Rep. 523.

There can be no doubt that the affidavit established sufficient probable cause to move the court's discretion to grant the search warrant. The facts presented to the court established probable cause that various instrumentalities used in the burglary were being kept in the defendant's pickup.

Defendant's issue No. 2 is whether or not the search warrant was defective. We find it was valid and proper.

Section 95-704, R.C.M. 1947, sets forth the grounds for a search warrant:

> "Any judge may issue a search warrant upon the written application of any person that an offense has been committed, made under oath or affirmation before him which:
>
> "(a) States facts sufficient to show probable cause for issuance of the warrant,
>
> "(b) Particularly describes the place or things to be searched, and
>
> "(c) Particularly describes the things to be seized."

Section 95-705, R.C.M. 1947, limits the scope of a search warrant and in pertinent part provides:

> "A search warrant may authorize the seizure of the following:
>
> "(a) Contraband.
>
> "(b) Any instruments, articles or things which are the fruits of, have been used in the commission of, or which may constitute evidence of, any offense."

Here, the search warrant satisfied all of the requirements. The warrant directed law enforcement personnel to search "a 1969 blue one-half ton Chevrolet pickup, Montana license number 2T-5275" that is located in Custer County garage in the city of Miles City, County of Custer, State of Montana. There can be no doubt that the thing to be searched was described with particularity. The warrant describes the exact thing to be searched

- 7 -

and described the area of the truck that could be searched.

The warrant directed the officers to search for "a walkie-talkie, license plates, and there may be fingerprints, letters, papers, burglary tools, and other objects or materials which may be the fruit of an offense or evidence of an offense." The things to be seized were sufficiently described. Officers, at the time of the arrest, observed a walkie-talkie in the pick-up--a walkie-talkie that was similar to the one found on Harris. The search warrant directed the officers to seize this walkie-talkie, which they had previously observed.

It was discovered that Meidinger and Harris had stolen some license plates and put them on the truck before they attempted the burglary. The license plates were "instruments, articles or things which * * * have been used in the commission of * * * any offense." These plates were used to hide the identity of the vehicle used in the burglary and to conceal the identity of the true owner of the vehicle. The plates were described with particularity.

The search warrant satisfied all of the requirements enunciated by this Court in State v. Quigg, 155 Mont. 119, 467 P.2d 692, approved by the United States District Court, Billings Division, on June 5, 1972. The direction to seize "other objects or materials which may be the fruit of an offense or evidence of an offense" satisfied the requirements of Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L ed 2d 782, which stated that "mere evidence" may be seized by officers during a search, especially where the evidence is connected to the offense. It is well established that, given a lawful search, some things may be seized in connection therewith which are not described in the warrant. Johnson v. United States, 293 F.2d

- 8 -

539; State v. Quigg, 155 Mont. 119, 467 P.2d 692.

Defendant also contends the search warrant was defective because it was directed to "any peace officer of this State." He contends the search warrant should be directed to a specific peace officer. Section 95-707, R.C.M. 1947, states:

> "A search warrant may in all cases be served by any of the officers mentioned in its direction, but by no other person except in aid of the officer on his requiring it, he being present and acting in its execution."

As the statute indicates, a warrant may be "served by any of the officers mentioned in its direction." Here, the warrant was directed "to any peace officers of this state." The warrant was served by peace officers, as directed.

Defendant is correct in that section 95-703, R.C.M. 1947, states that "A search warrant is an order * * * directed to a peace officer, commanding him to search for personal property and bring it before the judge." While this Court does not find that the search warrant was defective because it was not directed to a particular police officer, we do not approve this type of search warrant and recommend that such practice be discontinued. Reading section 95-703, R.C.M. 1947, in conjunction with section 95-707, R.C.M. 1947, we find the search warrant in this case complied with the requisite statutes. Any of the officers named in section 95-707 were authorized to serve the warrant within the territory in which they were authorized as officers to act. The search warrant was served by police officers of the city of Miles City, within the city. We cannot agree with defendant's contention that error was predicated on this highly technical point of law to the extent that it was so prejudicial as to necessitate retrial.

In this fact situation we find section 95-717, R.C.M.

1947, to be controlling. In pertinent part that section states:

> "No search and seizure, whether with or without warrant, shall be held to be illegal as to a defendant if:
>
> " * * *
>
> "(b) No right of the defendant has been infringed by the search and seizure, or
>
> "(c) Any irregularities in the proceedings do not affect the substantial rights of the accused."

Much was made by defendant as to the tools found in the vehicle at the time of the search. We find no merit to this allegation of error. Defendant and Harris were known to be setting up some business in Miles City to burglarize. This information came not only from the FBI but also from a local informant. They were known to be traveling together, they had stolen license plates that evening and Harris was caught coming out of the burglarized bar. The tools of his trade were new, as were those found in the truck, and their seizure was proper under <u>Warden, Maryland Penitentiary v. Hayden</u>, as "other objects or materials * * *". No substantial rights of defendant were infringed by the search and seizure. The evidence secured by the police officers under the circumstances heretofore detailed was competent.

We find no merit in defendant's issue No. 2.

Defendant's issue No. 3 is divided into six subsections.

A. Was the trial court in error when it waived the exclusionary rule? It has been a long and well established rule in Montana that the exclusionary rule does not apply to law enforcement personnel. State v. Fitzpatrick, 149 Mont. 400, 427 P.2d 300; State v. Walsh, 72 Mont. 110, 232 P. 194. The trial court, in exercising its discretion, was simply following the law. Here, the state is correct in submitting that it is

impossible for the trial court to err if it is following the doctrines promulgated by this Court. We cannot agree with defendant's contention that he was prejudiced by this action of the trial court. We find no error on the waiver of the exclusionary rule.

B. Defendant claims the State's opening statement was unethical and prejudicial. We find the opening statement of the prosecuting attorney was merely an explanation to the jury of the duties of the county attorney. Defendant has the duty to show that this statement affected his substantial rights. In the absence of such showing, there can be no prejudice.

In State v. Boe, 143 Mont. 141, 149, 388 P.2d 372, we stated:

> "Error will not be presumed nor will a criminal case be reversed for errors or defects appearing in the record which do not affect the substantial rights of the defendant. State v. Gransberry, 140 Mont. 70, 367 P.2d 766".

In State v. Straight, 136 Mont. 255, 264, 347 P.2d 482, we stated:

> "It is up to this court to decide whether an error affects the substantial rights of the defendant and the defendant must demonstrate prejudice from the record."

C. Defendant contends that evidence of other crimes was improperly admitted. Again, we cannot agree with defendant's contention. Specifically he contends the court erred in allowing evidence of (1) having a motor vehicle with false license plates; (2) having possession of burglary tools; (3) being an accessory to gambling; and (4) being an accessory to selling liquor after hours. Items (1) and (2) we find are not evidence of separate crimes, but rather were part of the res gestae and as such were properly admitted. Res gestae in its broad concept can generally be defined as a matter incidental to the main or

principal fact and explanatory thereof. It may include acts as well as words. 29 Am Jur 2d, Evidence §708. In item (3) defendant seems to be claiming error on matters raised by his direct testimony. This he cannot do. Item (4) relates to an alleged selling liquor charge that appears on defendant's FBI rap sheet. It was never shown to the jury, was not allowed in evidence, therefore this allegation can be classified as nit-picking, and without merit.

D. The Montana doctrine of cumulative error applies. We cannot accept this contention. Defendant in interpreting this doctrine points out 33 separate specifications of alleged errors and claims that the aggregate of these errors when taken as a whole constitutes prejudicial error. This doctrine, if it in fact exists, presumes that all 33 allegations are errors.

This Court does not feel obliged to refute all of these alleged errors because of an absence of any argument or authority supporting defendant's contention in each instance. We will, however, briefly answer.

Five of the specifications of error that concern instructions were not objected to at the time instructions were settled and cannot now be presented on appeal for the first time. State v. Boe, 143 Mont. 141, 388 P.2d 372. In four alleged errors concerning instructions the court sustained defendant's objections and we are unable to comprehend how defendant can claim error in the sustaining of his own objections.

The remainder of defendant's objections concern themselves with objections which were not sustained. He has not shown how the court erred in overruling these objections (aside from the fact that he simply claims it did), and certainly has not shown any prejudice.

Defendant also contends the court erred when it refused, without any objection from the state, to give various instructions offered by defendant. It is within the prerogative of the trial court to give instructions. The trial judge has the duty to instruct the jury as to the applicable law which he does by giving instructions he believes accurately state the law.

We find no merit in defendant's subdivision D.

E. Counsel for defendant Meidinger was ineffective. We find no merit in this argument.

In this case defendant was tried together with his co-defendant Harris. Both retained the same counsel to represent them during trial. Counsel was not appointed--he was retained by defendants. Prior to this appeal defendant had no claim he was denied effective counsel, but he now contends that since he was represented by the same counsel as Harris, he was denied his right to effective counsel. We note the following taken from the record:

> "THE COURT: Would the defendants please stand. Now before we go into the sentencing, it's important to this Court, to know--and I want to know at this time, are you satisfied with your counsel?
>
> "DEFENDANT MEIDINGER: Yes.
>
> "THE COURT: Mr. Meidinger, are you satisfied with your counsel?
>
> "DEFENDANT MEIDINGER: Yes.
>
> "THE COURT: Do you believe that he truly represented you?
>
> "DEFENDANT MEIDINGER: Yes, I do."

Defendant was satisfied with his counsel by his own words. He is precluded from now attempting to raise this issue on appeal.

The problem of multiple defendants retaining one counsel

- 13 -

to defend them has in the recent years become a source of contention between the state and federal jurisdictions. It had been assumed, until recent years, that when knowledgeable adults hired counsel in a criminal case they knew what they were doing; that they were knowledgeable enough to realize that though their interests as defendants might be in conflict their retained attorney would protect such individual interests in defending them. The whole problem directs itself ultimately on appeal to the adequacy or inadequacy of defense counsel and in the eyes of this Court such adequacy or unadequacy of counsel should not be tested by the greater sophistication of appellate counsel who did not try the case, nor should the test be made on the basis of applying different defense tactics, perhaps of doubtful efficiency, after leisurely studying the transcript of the trial. To make success the only test of effective counsel would be an injustice to many able counsel, for frequently the ablest of counsel is overcome by truth.

Most of the recent decisions speaking to the issue are based on Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L ed 680, 702, and is relied upon by defendant. Glasser does not hold that the fact a single attorney is appointed to defend and represent two defendants is ipso facto evidence of lack of effective counsel. Factwise, Glasser is considerably different than the instant case. Glasser had retained counsel and then just before trial, after an alleged co-conspirator's counsel had withdrawn, a federal judge's ruling placed his counsel in the position of representing the alleged co-conspirator as well as Glasser at a joint trial. Glasser objected. That is not the case here. As the U. S. Supreme Court noted "Glasser wished the benefit of the undivided assistance of counsel of his own choice.

- 14 -

We think that such a desire on the part of an accused should be respected." Likewise we feel, under the facts before us, that where two defendants desire to retain one counsel their decision should be honored. Too, that later, when on hindsight after conviction, they should not be allowed to change that decision by alleging on appeal the inadequacy of their chosen counsel, especially when raised for the first time on appeal.

F. The final subsection under defendant's issue No. 3 alleges he was denied a fair trial due to the fact the prosecution was permitted to demean witnesses for the defense. The county attorney asked Meidinger and his brother various questions, all under the rules governing cross-examination. From the record, all his questions were asked in good faith. Scrutinizing these questions from a defense standpoint, we cannot find them to be insulting and demeaning, let alone prejudicial. We find no merit in this contention.

Defendant's Issue No. 4 alleges the jury was improperly instructed.

Defendant maintains the court erred in refusing to give his offered instruction No. 23. It was refused because it was already covered by other instructions. Proposed instruction No. 23 read:

> "In that the evidence shows Leon Meidinger did
> not make entry into Kelly's Gaslight you must
> find beyond a reasonable doubt that he either
> aided or abetted another person making an entry
> or advised and encouraged another person who
> made entry and failing to find either of these
> conditions beyond a reasonable doubt, you must
> find the defendant Leon Meidinger not guilty."

Court's instructions No. 19 and 20 cover proposed No. 23. No. 19 states, in part:

> "If you find beyond a reasonable doubt that

the defendant, Phillip Harris, on or about the date charged in the information entered Kelly's Gaslite, Miles City, Montana, during the night-time with the intent to commit larceny, and if you find beyond a reasonable doubt that the Defendant Leon Oscar Meidinger aided and abetted or advised and encouraged Phillip Harris, then you should return a verdict of guilty on defendants Phillip Harris and Leon Oscar Meidinger."

No. 20 stated:

"One may become an accomplice by being present and joining in the criminal act, by aiding and abetting another in its commission, or, not being present, by advising and encouraging its commission; but knowledge and voluntary actions are essential in order to impute guilt."

In State v. Logan, 156 Mont. 48, 66, 473 P.2d 833, this Court said:

"Refusal to give an instruction already covered by other instructions is not error."

Defendant contends the court erred in refusing to give his proposed instruction No. 20:

"A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof."

The court properly refused to give this instruction because there were no accomplices who testified for the state. The only accomplices were Meidinger and Harris, and their testimony surely did not assist the state in securing a conviction. Since the conviction was not had on the testimony of an accomplice, the court properly refused the instruction.

Finally, we consider the witness Lila Williamson and whether or not she was an accomplice. Assuming arguendo that she was--there was still sufficient evidence before the jury that corroborated the evidence given by Lila Williamson connecting defendant to the crime. Wigmore on Evidence, 3rd Ed., Vol. 7,

- 16 -

§ 2059, (1970 Pocket Supp. p. 108) cites State v. Barick, 143 Mont. 273, 282, 389 P.2d 170, as a discerning opinion, authored by Mr. Justice Castles, covering this issue. There it was said:

> "Accomplices are not precluded from testifying in criminal cases in Montana. R.C.M. 1947, §§ 94-7220, 94-8803, 94-8804, 94-8801, 93-701-1, 93-701-2, 93-701-3, 93-701-4.
>
> "The fact that accomplices are convicted felons at the time of their giving testimony does not detract from their competency as witnesses. R.C.M. 1947, § 94-4723.
>
> "Therefore, we are only concerned with that portion of section 94-7220, which says ' * * * unless he [the accomplice] is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense * * *.' Emphasis supplied.
>
> "The sufficiency of the corroboration necessary, to sustain a conviction based upon accomplice testimony, is a matter of law. [Citing cases.]"

Here, we hold that as a matter of law there was sufficient corroboration. We find no merit in defendant's Issue No. 4.

For the foregoing reasons, the decision of the district court is affirmed.

_____
Associate Justice

We concur:

_____
Chief Justice

_____

_____

_____
Associate Justices

- 17 -