No. 13138

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

STATE OF MONTANA on the Relation of CORAL K. STIEF,

Petitioner,

-vs-

THE HONORABLE C. B. SANDE, District Judge of Department
No. 1 of the Thirteenth Judicial District of the State
of Montana, in and for the County of Yellowstone,

Respondent.

----------------------------------------------------------------

No. 13139

STATE OF MONTANA on the Relation of HAROLD T. MANKIN,

Petitioner,

-vs-

THE HONORABLE C. B. SANDE, District Judge of Department
No. 1 of the Thirteenth Judicial District of the State
of Montana, in and for the County of Yellowstone,

Respondent.

Originial Proceeding:

Counsel of Record:

For Petitioners:

Arnold A. Berger argued, Billings, Montana
Berger, Anderson, Sinclair & Murphy, Billings,
Montana

For Respondents:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Thomas A. Budewitz, Assistant Attorney General,
argued, Helena, Montana
Harold F. Hanser, County Attorney, argued, Billings,
Montana

Submitted:  September 12, 1975

Decided:  SEP 25 1975

Filed:  SEP 25 1975

_Thomas J. Kearney_
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

These are original proceedings. On August 21, 1975, petitioners separately asked this Court for writs of supervisory control or other appropriate writs directing the respondent district court to grant petitioners' motions to suppress certain evidence and dismiss the informations against petitioners. The causes were consolidated for convenience and counsel for petitioners was heard ex parte and thereafter an adversary hearing was ordered and the same held on September 12, 1975, at which time counsel for the parties were heard and the matters taken under advisement.

Petitioners were charged by informations filed on June 11, 1975, in the respondent court with theft. The informations were supported by affidavits of a deputy Yellowstone County attorney containing facts obtained by that office as a result of search warrants issued on May 30, June 2, and June 3, 1975, providing for searches of a residence at No. 3 Vigilante Trail in Billings and of the bank records of Harold Mankin at First Citizens Bank in Billings.

The first search warrant issued on May 30, 1975, arose from the following fact situation: A neighbor notified the Yellowstone County authorities of a number of guns being taken from the residence at No. 3 Vigilante Trail and being loaded into a pickup camper. The Billings police stopped the pickup one hour later and discovered 14 guns during a consent search of the pickup. All but two of the guns were released to the driver of the pickup after a check of serial numbers indicated none had been reported stolen. After a search of a more complete list of stolen guns, the Billings police determined three of the guns given back to the driver had been stolen in two separate burglaries. A Billings police detective

- 2 -

then applied for the first May 30, 1975 warrant to search the residence at No. 3 Vigilante Trail for other guns and goods stolen in the two thefts. While searching the residence pursuant to the first warrant, goods were observed that had been stolen in still other burglaries in the Billings area. These observations resulted in the applications for the other three warrants.

The pertinent portions of the first warrant read as follows:

"THE STATE OF MONTANA TO Judge

" * * *

"You are hereby commanded to serve this warrant and search the place described above for the property specified * * *.

"Dated this 30th day of May, 1975.

"W. E. Dowlin, Jr.
Judge"

The search warrant receipt was signed by a member of the Billings Police Department. The other three warrants were similarly directed to the judge himself who issued the warrant.

A search warrant is defined in section 95-703, R.C.M. 1947, as:

" * * * an order in writing, in the name of the state, signed by a judge, particularly describing the thing or place to be searched and the instruments, articles or things to be seized, directed to a peace officer, commanding him to search for personal property and bring it before the judge." (Emphasis added)

The persons who may serve a search warrant are limited by section 95-707, R.C.M. 1947, as follows:

"A search warrant may in all cases be served by any of the officers mentioned in its direction, but by no other person except in aid of the officer on his requiring it, he being present and acting in its execution."

All of the search warrants in question here were directed to the judge signing the warrant. In Montana is a "judge" considered a "peace officer"? The Montana statutes in section 95-210, R.C.M. 1947, define a "peace officer" as:

- 3 -

" * * * any person who by virtue of his office
or public employment is vested by law with a
duty to maintain public order or to make arrests
for offenses while acting within the scope of his
authority."

A "judge" is separately and distinctly defined in sec-
tion 95-206, R.C.M. 1947, as:

" * * * a person who is invested by law with the
power to perform judicial functions and includes
court, justice of the peace or police magistrate
when a particular context so requires."

The judge signing the search warrant is not, and cannot
by definition, be a "peace officer", therefore, the search warrants
in question were defective in not being "directed to a peace offi-
cer" as required by section 95-703.

Furthermore, the search warrants were not served by the
officer to whom directed as required by section 95-707. Service
of the warrant by the police officer was therefore defective.

In 1972, this Court stated in State v. Meidinger, 160 Mont.
310, 319, 502 P.2d 58, that search warrants issued in the future
must comply with the letter and spirit of section 95-703, R.C.M.
1947. The search warrant in Meidinger was directed to "any police
officer of this State" rather than to "a peace officer" (emphasis
added) as required by statute. This Court did not find that
search warrant fatally defective, but did issue this warning about
the use of similarly defective search warrants in the future at
page 319:

" * * * While this Court does not find that the
search warrant was defective because it was not
directed to a particular police officer, we do
not approve this type of search warrant and
recommend that such practice be discontinued."
(Emphasis added)

After three years, this recommendation has not been heeded.

The county attorney concedes that the search warrants
were defective in not being "directed to a peace officer", but
maintains the defect is merely technical and not sufficiently

- 4 -

serious to render the search warrant void. He argues the

drafters of the Montana Code of Criminal Procedure anticipated

occasional technical mistakes in obtaining search warrants when

they stated in section 95-717, R.C.M. 1947:

> "No search and seizure, whether with or without
> warrant, shall be held to be illegal as to a
> defendant if:
>
> " * * *
>
> "(b) No right of the defendant has been infringed
> by the search or seizure, or
>
> "(c) Any irregularities in the proceedings do not
> affect the substantial rights of the accused."

This Court in State v. Straight, 136 Mont. 255, 264, 347

P.2d 482, stated:

> " * * * It is up to this court to decide whether
> an error affects the substantial rights of the
> defendant * * *."

This Court has very recently stated in State v. Tropf, ____

Mont.____, 530 P.2d 1158, 1162, 32 St.Rep. 56:

> "Section 95-703, R.C.M. 1947, by definition directs
> that a search warrant 'is an order in writing, in
> the name of the state'. This would contemplate, as
> in all other criminal matters and particularly in
> matters that pertain to the authorizing instrument
> to search a person's home, that notice to the person
> subject to the process concerning the origin of the
> process and to whom he may address his grievances in
> response for an inventory (section 95-712, R.C.M.
> 1947) are matters of due process and not technical
> irregularities. Omissions in this regard would be
> substantive and infringe on the rights of the person
> whose residence is being searched and would neces-
> sarily be prejudicial error."

This Court went on to say, regarding the recommendation in

Meidinger:

> "This was not a license to erode the process but
> an admonition to recognize that the procedures
> in this area are to be strictly applied, very
> simply because they deal with an exception that
> permits the sovereign to enter upon a constitu-
> tionally protected area."

We find the search warrants in question to be fatally

defective and void. The district court is ordered to grant

petitioners' motions to suppress.

_James T. Harrison_
Chief Justice

We concur:

_Wesley Castles_

_John Conway Harrison_

_Frank I. Haswell_

_Gene B. Daly_
Justices

- 6 -