No. 13000

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JAMES S. SNIDER,

Defendant and Appellant.

---

Appeal from:   District Court of the Tenth Judicial District,
Honorable LeRoy L. McKinnon, Judge presiding.

Counsel of Record:

For Appellant:

Johnson and Foster, Lewistown, Montana
K. Robert Foster argued, Lewistown, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Thomas A. Budewitz, Assistant Attorney General, argued,
Helena, Montana
William A. Spoja, Jr. County Attorney, Lewistown, Montana
Theodore P. Cowan, Deputy County Attorney, appeared,
Lewistown, Montana

For Amicus Curiae:

Thomas Honzel argued, Helena, Montana

---

Submitted:   September 22, 1975

Decided OCT 2 8 1975

Filed:

*Thomas J. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant appeals from a judgment convicting him of illegal possession of dangerous drugs following a trial in the district court, Fergus County, before the Honorable LeRoy L. McKinnon, district judge, sitting without a jury.

The material facts are undisputed. Justice of the Peace Robert C. Brooks of Lewistown Township, Fergus County, Montana, issued a search warrant on the basis of a sworn application by Randall Cordle, a Fergus County deputy sheriff. The search warrant authorized "any Peace Officer of this State" to search "a single story, gray, wood frame house, located directly to the rear of a mobile home located at 608 2nd Street West, Lewistown, Fergus County, Montana" for marijuana and other dangerous drugs.

The warrant was executed by Deputy Sheriff Cordle with the assistance of two deputies and a Lewistown police officer. As they approached the residence in the late evening of August 4, 1974, defendant James S. Snider came out of the front door clad only in shorts. He spotted the approaching officers, turned, ran back into the house and slammed the door. Deputy Sheriff Cordle ran into the house right behind him and observed Snider "standing by the sink trying to put down his mouth what appeared to be a baggie of marijuana." A subsequent search uncovered "other drug substances found within the residence."

A field test was performed on the substance taken from Snider and it tested positive for marijuana. Later this substance was sent to the state criminal investigation laboratory in Missoula where the chemist's report identified it as marijuana.

Snider was charged with the crime of "FELONY - Illegal Possession of Dangerous Drugs" by reason of possession of more than 60 grams of marijuana in violation of section 54-133, R.C.M.

1947.  He pled "not guilty".

Prior to trial, Snider moved to suppress "any and all evidence obtained from the Defendant pursuant to the search warrant * * *."  Following a hearing, the district court denied the motion to suppress.

Defendant filed a written waiver of jury trial.  Trial was held on March 3, 1975 before Judge McKinnon.  The baggie of marijuana and the chemist's report from the state criminal investigation laboratory were admitted in evidence over defendant's objection.  Defendant took the witness stand and on both direct examination by his own counsel, and cross-examination by the state, admitted starting to eat "pot" when the officers first arrived on the premises.  Defendant was convicted of felony - illegal possession of dangerous drugs and granted a two year deferred sentence.  Defendant now appeals from the judgment of conviction.

The issues on appeal are:  (1) Was denial of defendant's motion to suppress reversible error?  (2) was the admission in evidence of the marijuana and laboratory report reversible error?

Defendant's principal contention is that the search warrant was invalid because it was issued by a justice of the peace who has no jurisdiction or authority to issue a search warrant for dangerous drugs.  Accordingly, he argues, the entry into the residence and the seizure of the marijuana under authority of the search warrant were unlawful and the evidence should have been suppressed.

Section 95-704, R.C.M. 1947, provides:

"Any judge may issue a search warrant upon the
written application of any person that an offense
has been committed * * *."  (Emphasis supplied)

The term "judge" is defined in section 95-206, R.C.M. 1947:

"'Judge' means a person who is invested by law
with the power to perform judicial functions and

includes court, justice of the peace or police magistrate <u>when a particular context so requires</u>." (Emphasis supplied)

This Court recently held that in the context of issuance of search warrants, the term "judge" does not require or include a police magistrate and accordingly he has no authority to issue a search warrant. State v. Tropf, ____Mont.____, 530 P.2d 1158, 32 St.Rep. 56. But it does not follow that a justice of the peace stands on the same footing as a police judge when it comes to issuing search warrants. Unlike a police magistrate, a justice of the peace is included within the term "any judge" in section 95-704 in the context of issuing search warrants.

Although both police courts and justice of the peace courts are courts of limited jurisdiction, substantial differences between the two exist.

Justices of the peace were not subject to disqualification by affidavit at the time this case arose (Bailey v. State, 163 Mont. 380, 517 P.2d 708), while police judges were expressly subject to such disqualification (section 11-1713, R.C.M. 1947). The jurisdiction of the two courts is substantially different. Cf. sections 11-1602 and 11-1603, R.C.M. 1947 (police courts) and section 95-302, R.C.M. 1947 (justice courts).

Justice courts are constitutionally created while police courts are not. Article VII, Section 1, 1972 Montana Constitution provides:

"The judicial power of the state is vested in one supreme court, district courts, justice courts, and such other courts as may be provided by law."

Art. VII, Section 5, 1972 Montana Constitution provides:

"(1) There shall be elected in each county at least one justice of the peace * * *.

"(2) Justice courts shall have such original jurisdiction as may be provided by law. They shall not have trial jurisdiction in any criminal case designated a felony except as examining courts.

- 4 -

"(3) The legislature may provide for additional justices of the peace in each county."

The legislature has given justice courts the power and jursidiction to act as examining courts in felony cases. Section 95-302, R.C.M. 1947. Such power and jurisdiction had not been granted to police courts at the time this case arose. A legislative intent to include the power to issue search warrants within the grant of jurisdiction to act as examining courts is apparent from legislative history coupled with Montana's existing judicial structure.

At various times the legislature has placed restrictions upon the authority of justices of the peace to issue search warrants. In 1912, a justice of the peace did not have authority to issue a search warrant in connection with the alleged violation of a city ordinance concerning operation of a saloon. State ex rel. Streit v. Justice Court, 45 Mont. 375, 123 P. 405. In 1968, a justice of the peace did not have jurisdiction to issue a search warrant relating to illegal possession of narcotic drugs. Former section 54-112, R.C.M. 1947; State v. Langan, 151 Mont. 558, 445 P.2d 565. In 1969, the legislature passed the present Dangerous Drug Act which does not contain any limitation on the issuance of search warrants to district judges, as formerly required, or to any particular type of judge. Section 54-138, R.C.M. 1947, now provides:

> "The district court shall have exclusive trial jurisdiction over all prosecutions commenced under the Montana Dangerous Drug Act." (Emphasis supplied).

The use of the term "trial jurisdiction" constitutes a legislative acknowledgement that other types of jurisdiction exist in these cases and are not vested exclusively in the district courts.

Montana's existing court system as established by the

legislature supports a legislative intent to grant justices of the peace jurisdiction to issue search warrants. There are 56 counties in the state, with 28 district judges. These district judges serve judicial districts comprising from one to seven counties. They generally reside and spend the major part of their time in the most populous county within their judicial district. Because of this court system and its inherent geographical limitations, many of the outlying counties simply do not have a district judge available on a moment's notice to issue search warrants, as frequently required in drug cases. But, as indicated above, every county has one or more justice of the peace. Under these known circumstances, the legislature will be presumed to have intended to grant justices of the peace the right to issue search warrants in the absence of any express limitation.

Perhaps the clearest indication of how the legislature itself treated the subject is the 1975 amendment giving police judges the same jurisdiction and responsibility as justices of the peace in handling applications for search warrants. Sec. 2, Ch. 165, Laws 1975, codified as section 11-1604(3), R.C.M. 1947.

This construction is further supported by the relatively common practice of justices of the peace in issuing search warrants. Where the legislature has had the opportunity to provide otherwise and has not seen fit to do so, a legislative intent to authorize the practice is presumed. State ex rel. Roeder v. State Board of Equalization, 133 Mont. 393, 324 P.2d 1057.

This construction is consistent with United States constitutional guarantees requiring a "neutral and detached magistrate" to examine the application for a search warrant and determine whether reasonable cause exists for its issuance. In the language of the United States Supreme Court in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.ed. 436, 440:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive business of ferreting out crime."

A justice of the peace clearly meets the standard of "a neutral and detached magistrate."

For the foregoing reasons, we hold that a justice of the peace has jurisdiction and authority to issue a search warrant.

Defendant further contends that the search warrant here is invalid because it is directed to "any Peace Officer of this State". This issue was not raised in the district court, but is urged for the first time on appeal from the judgment of conviction. On the merits, we hold that this defect is not fatal under the circumstances of this case.

We have previously condemned the practice of issuing search warrants directed to "any peace officer of this state." State v. Meidinger (1972), 160 Mont. 310, 502 P.2d 58; State v. Tropf (1975), ___Mont.___, 530 P.2d 1158, 32 St.Rep. 56. We again disapprove such practice. However, under the facts of this case it is not a fatal defect rendering the search warrant invalid. Deputy Sheriff Cordle applied for the warrant and it was executed by him. Under such circumstances, no prejudice resulted to defendant by failure to direct the search warrant to a particular peace officer pursuant to section 95-703, R.C.M. 1947.

Defendant next contends that the admission in evidence of the baggie of marijuana and the laboratory report of the chemist at the State Criminal Investigation Lab was reversible error.

He contends the baggie of marijuana was not admissible because the chain of possession and custody was not established.

For this reason, he claims his motion to suppress this evidence prior to trial, and his objection to its admissibility at the trial should have been granted.

The chain of possession and custody of the marijuana was established by the testimony of Deputy Sheriff Cordle. He testified that the marijuana was taken from defendant's mouth when he was attempting to swallow it following the officers' entry on the premises; that he took the marijuana and locked it in the vault in the sheriff's office; that he packaged it, marked it, addressed it, and mailed it by registered mail to the State Criminal Investigation Lab in Missoula; that he received it back from the Lab a few days thereafter; and, he identified the exhibit as the same baggie of marijuana he sent to the Lab through the markings he placed thereon. This is clearly a sufficient foundation to establish the chain of possession. It is completely unnecessary to call each person who handled it as a witness at the trial. The marijuana was properly admitted.

Defendant further contends that the written report of the chemist at the State Criminal Investigation Lab was inadmissible in evidence on two grounds: (1) it was written hearsay, and (2) no foundation was laid qualifying the state chemist for expert opinion testimony identifying the tested substance as marijuana.

Defendant is correct in stating that the report was written hearsay. However, it was admissible as a statutory exception to the hearsay rule pursuant to the Uniform Official Reports as Evidence Act. Section 93-901-1, et seq., R.C.M. 1947.

Section 93-901-1 of the Act provides:

"Written reports or findings of fact made by officers of this state, on a matter within the scope of their duty as defined by statute, shall, insofar as relevant, be admitted as evidence of the matters stated therein."

The Division of Criminal Investigation including the State

Criminal Investigation Laboratory was created pursuant to section 82-414 et seq., R.C.M. 1947. The powers and duties of agents of the division are defined in pertinent part in section 82-416:

> "(1) Assist city, county, state and federal law enforcement agencies at their request by providing expert and immediate aid in investigation and solution of felonies committed in the state."

Section 82-414(3) provides:

> "Each agent shall be a person qualified by experience, training and high professional competence in criminal investigation. Qualifications shall be equal to those of similarly assigned federal bureau of investigation personnel."

Pursuant to this authority the office of state chemist was established to assist local law enforcement officials in identification of dangerous drugs.

The written report of the state chemist contained the following written analysis of the substance submitted by the Fergus County sheriff's office:

> "Microscopic examination of the above described material, Lab #AC-02-081274, showed the presence of properties which are characteristic of the marihuana plant. Further analysis of the above by thin layer chromatography was positive for the presence of $\Delta^9$-tetrahydrocannabinol, the active controlled substance of marihuana and other cannabinolic compounds which are found in marihuana."

This report was signed by Donald L. Smith, chemist, Criminal Investigation Lab.

A state Criminal Laboratory report showing a substance to be marijuana has been held admissible hearsay in a criminal proceeding. State v. One Certain Conveyance, Etc., (Iowa 1973), 211 N.W.2d 297.

The Montana Act making this report admissible does not require the presence of the chemist at the trial to verify his written report nor for cross-examination on the report. Section 93-901-3, R.C.M. 1947. In any event, defendant was free to

subpoena the chemist as a witness if he wished to contest the report or cross-examine him on his qualifications or expertise.

Additionally, defendant testified on direct examination that after Deputy Sheriff Cordle entered the room "I started to eat this pot." On cross-examination by the deputy county attorney, defendant further testified:

> "Q. You claimed that you were eating pie? A. Pot.
>
> "Q. Pardon? A. Pot.
>
> "Q. Oh, you were eating pot. Excuse me, I thought you said you were eating pie. A. No.
>
> "Q. You were eating pot? A. Yes, I was.
>
> "Q. The testimony Mr. Cordle gave a few minutes ago with respect to your putting something in your mouth, it was pot, is that correct? A. Yeah."

For these reasons, we hold that the marijuana and state chemist's report were admissible in evidence. Judge McKinnon was correct in denying defendant's motion to suppress and defendant's objections.

The judgment of the district court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

- 10 -

Mr. Justice Gene B. Daly concurring in part and dissenting in part:

I concur that a justice of the peace has jurisdiction and authority to issue a search warrant.

> "Section 95-703. <u>Search warrant defined</u>. A search warrant is an order in writing, in the name of the state, signed by a judge, particularly describing the thing or place to be searched and the instruments, articles or things to be seized, <u>directed to a peace officer</u>, commanding <u>him</u> to search for personal property and bring <u>it</u> before the judge." (Emphasis supplied.)

> "Section 95-707. <u>By whom served</u>. A search warrant may in all cases be served <u>by any of the officers mentioned in its direction, but by no other person</u> except in aid <u>of the officer on his requiring it, he being present and acting in its execution</u>." (Emphasis supplied.)

The language in these sections is absolutely clear and unambiguous and needs no interpretation by any court. The language is mandatory that the warrant be served by the officer or officers named in its direction "<u>but by no other person</u>".

We were in error in State v. Meidinger, 160 Mont. 310, 502 P.2d 58, in rationalizing that the warrant could be directed to "any peace officer of this state" and then condemning the practice with the hope it would be discontinued.

In State v. Tropf, ____Mont.____, 530 P.2d 1158, 1162, 32 St.Rep. 56, the rationalization in <u>Meidinger</u> was cited as an excuse not to follow the law as it pertains to the issuance of a search warrant and pass off the omissions as "highly technical" defects. Again in <u>Tropf</u>, referring to the admonition in <u>Meidinger</u>, this Court directed:

> "<u>This was not a license to erode the process but an admonition to recognize that the procedures in this area are to be strictly applied, very simply because they deal with an exception that permits the sovereign to enter upon a constitutionally protected area</u>." (Emphasis supplied.)

Now the Court is returning to <u>Meidinger</u> and relegislating the rationalization of that case which cannot be supported in

law or in logic.

Here, the argument in the majority opinion seems to say it is not a fatal defect rendering the search warrant invalid, because the "applicant", although not named, executed the warrant and no prejudice resulted.

A lengthy opinion could be written on the constitutional reasons for the strict application directed in Tropf, however, the constitutional implications referred to there will serve to support these remarks. It makes little difference whether you declare the search warrant "invalid" or you follow the law in a literal sense and declare that unless the officer's name appears on the face he cannot execute the warrant, valid or not; i.e., the officer cannot enter the protected premises.

Prejudice has nothing to do with the strict application of the statute. However, if an officer goes on the premises illegally, it would seem to follow that the events that transpire thereafter are prejudicial.

The product of the search under this warrant should have been suppressed.

_____Gene B Daly_____
Justice

- 12 -