No. 97-581

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 143

STATE OF MONTANA,

   Plaintiff and Appellant,

  v.

JONI MARIE PIPKIN,

   Defendant and Respondent.

APPEAL FROM:  District Court of the Twentieth Judicial District,
       In and for the County of Sanders,
       The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

   For Appellant:

      Hon. Joseph P. Mazurek, Attorney General; Tammy K. Plubell,
      Assistant Attorney General; Helena, Montana

      Bob Slomski, Sanders County Attorney; Thompson Falls,
      Montana

   For Respondent:

      John O. Putikka, Attorney at Law; Thompson Falls, Montana

      Submitted on Briefs: March 26, 1998

      Decided: June 9, 1998

Filed:

_____
       Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1     The State of Montana filed an information with the District Court of the Twentieth Judicial District in Sanders County in which it charged the defendant, Joni Marie Pipkin, with manufacture of dangerous drugs in violation of § 45-9-110, MCA; criminal possession of dangerous drugs in violation of § 45-9-102, MCA; criminal possession with intent to sell in violation of § 45-9-103, MCA; use or possession of property subject to criminal forfeiture in violation of § 45-9-206, MCA; and criminal possession of drug paraphernalia in violation of § 45-10-103, MCA.  Pipkin moved to suppress all evidence seized pursuant to the State's search warrant on the ground that the warrant was not directed to a specific peace officer as required by § 46-5-223, MCA, and that it had not been served by a peace officer named in the warrant, as required by § 46-5-226, MCA.  That motion was granted and the evidence seized at Pipkin's residence was suppressed.  The State appeals the District Court's order of suppression pursuant to § 46-20-103(2)(e), MCA. We reverse the District Court's suppression order.

¶2     The issue on appeal is whether the District Court erred when it concluded that the State violated Pipkin's substantial rights and, therefore, suppressed all evidence seized pursuant to the State's search warrant.

                    FACTUAL BACKGROUND

¶3  On May 20, 1997, Deputy Darrell Chenoweth, of the Sanders County Sheriff's Department applied for a search warrant from Sanders County Justice of the Peace Bob Beitz. Chenoweth made the application under oath and swore to the accuracy of the information contained in the application.  Chenoweth described with particularity the places to be searched and described the items to be seized.

¶4  Judge Beitz issued the search warrant on May 20, 1997, based upon the sworn application of Deputy Chenoweth.  The search warrant described with particularity the locations authorized to be searched and the items subject to seizure.  Judge Beitz stated in the warrant that he was "satisfied that there is probable cause" to believe that the items indicative of criminal conduct that are described in the search warrant application were located at the property described.  The face sheet of the warrant is a printed form which includes the salutation: "The State of Montana to: _____." Deputy Chenoweth's name was not inserted following the salutary language.  For some reason, the space was left blank.  The first line of the opening paragraph, however, states: "A sworn application having been made before me by Deputy Darrell Chenoweth . . . ."  After signing the search warrant, Judge Beitz personally delivered it to Chenoweth.

¶5     On the same date, May 20, 1997, Chenoweth executed the search warrant by searching the residence and outbuildings owned and occupied by the defendant, Joni Marie Pipkin, and her husband.  During that search, Chenoweth, along with other Missoula law enforcement officers, seized marijuana plants, drug paraphernalia, and other items used to grow the plants. After completing the search, Pipkin and her husband were arrested.

¶6     On May 21, 1997, Chenoweth personally filed the return of the search warrant with Judge Beitz, and filed a detailed list of all the items seized pursuant to the search warrant.  On June 4, 1997, the State filed the information in the District Court which charged Pipkin with the drug-related offenses.  Pipkin pled not guilty to all of the charges.

¶7     On August 5, 1997, Pipkin filed a motion to suppress all evidence the State seized pursuant to the search warrant.  Pipkin claimed the warrant was

invalid because it was not directed to a specific peace officer as required by § 46-5-223, MCA, and was not served by the peace officer named in the search warrant as required by § 46-5-226, MCA. Pipkin further argued that any statutory violation concerning the issuance of a search warrant "clearly violates a 'substantial right' of Pipkin to be protected by the Fourth Amendment against 'unreasonable searches and seizures.'"

¶8 On October 3, 1997, the District Court entered its order which granted Pipkin's motion to suppress based on its conclusion that the State's failure to comply with § 46-5-223, MCA, "violates the Defendant's U.S. and Montana constitutional rights."

DISCUSSION

¶9 Did the District Court err when it concluded that the State violated Pipkin's substantial rights and, therefore, suppressed all evidence seized pursuant to the State's search warrant?

¶10 We have held that a district court's conclusions of law regarding a motion to suppress are reviewed to determine whether the district court's interpretation of the law is correct. See State v. Roberts (Mont. 1997), 54 St. Rep. 745, 745, 943 P.2d 1249, 1250.

¶11 Warrants to search a person's home are required by the Federal and State Constitutions. The Fourth Amendment of the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers and effects
> against unreasonable searches and seizures shall not be violated; and no
> warrant shall issue but upon probable cause, supported by oath or affirmation,
> and particularly describing the place to be searched, and the person or things
> to be seized.

> Article II, Section 11, of the Montana Constitution, similarly provides:
> The people shall be secure in their persons, papers, homes and effects from
> unreasonable searches and seizures. No warrant to search any place, or seize
> any person or thing shall issue without describing the place to be searched or
> the person or thing to be seized, or without probable cause, supported by oath
> or affirmation reduced to writing.

¶12 In order to deter law enforcement officials from conducting unconstitutional searches or seizures, the United States Supreme Court established the exclusionary rule in Mapp v. Ohio (1961), 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081. The exclusionary rule functions as a judicially created remedy "designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Calandra (1974), 414 U.S. 338, 348, 94 S. Ct. 613, 620, 38 L. Ed. 2d 561, 571. The primary purpose of the exclusionary rule "is to deter future unlawful police conduct" by making evidence which the State obtains through a search and seizure in violation of the Fourth Amendment, inadmissible in criminal proceedings. Calandra, 414 U.S. at 347, 94 S. Ct. at 619, 38 L. Ed. 2d at 571. The result of the exclusionary rule is that, in the absence of one of the recognized exceptions to the

warrant requirement, a search made without a warrant is unlawful and any evidence which results from the search should be suppressed.

¶13  We review the validity of a search warrant by employing a common sense and realistic approach.  In United States v. Ventresca (1965), 380 U.S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684, the Supreme Court stated that:

[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. . . . Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

Ventresca, 380 U.S. at 108, 85 S. Ct. at 746, 13 L. Ed. 2d at 689.  Our public policy to encourage police officers to obtain warrants, see, e.g., United States v. Chadwick (1977), 433 U.S. 1, 9, 97 S. Ct. 2476, 2482, 53 L. Ed. 2d 538, 547, Terry v. Ohio (1968), 392 U. S. 1, 20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889, 905, United States v. Lefkowitz (1932), 285 U.S. 452, 464, 52 S. Ct. 420, 423, 76 L. Ed. at 877, 882, is reflected in § 46-5-103, MCA, which sets forth:

When search and seizure not illegal. (1) A search and seizure, whether with or without a warrant, may not be held to be illegal if:
(a)  the defendant has disclaimed any right to or interest in the place or object searched or the evidence, contraband, or person seized;
(b)  a right of the defendant has not been infringed by the search and seizure; or
(c)  any irregularity in the proceedings has no effect on the substantial rights of the accused.

(Emphasis added.)

¶14  Pipkin contends that the State violated § 46-5-223, MCA (formerly § 45-5-203, MCA), when it failed to address the warrant to a specific officer.  That statute requires that "[a] search warrant must be directed to a specific peace officer commanding the officer to search for and seize the evidence, contraband, or person designated in the warrant."

¶15  The Commission Comments to the rule identify the purpose of the statute as follows: "The requirement that the officer be named presumes that the officer will have knowledge of the place to be searched and the object to be seized."  Section 46-5-223, MCA, Commission Comments.

¶16  In the past, when we have considered whether failure to direct a warrant to a specific peace officer affects the substantial rights of the accused, we have been

inconsistent. When this Court was first called upon to decide this issue, we concluded that "[w]e cannot agree with defendant's contention that error was predicated on this highly technical point of law to the extent that it was so prejudicial as to necessitate retrial." State v. Meidinger (1972), 160 Mont. 310, 319, 502 P.2d 58, 64. We did note, however, that we disapproved of the State's practice of addressing search warrants to "any" peace officer. Three years later, we reaffirmed that holding in State v. Snider (1975), 168 Mont. 220, 514 P.2d 1204. Once again we noted that we disapproved of the State directing search warrants to "any" peace officer, but we concluded that based upon the facts of the case, that failure did not render the search warrant fatally defective. Snider, 168 Mont. at 227, 514 P.2d at 1208. We stated that "no prejudice resulted to defendant by failure to direct the search warrant to a particular peace officer." Snider, 168 Mont. at 227, 514 P.2d at 1208.

¶17 Although we addressed this issue peripherally in State ex rel. Stief v. Sande (1975), 168 Mont. 87, 90, 540 P.2d 968, 970, and State v. Tropf (1975), 166 Mont. 79, 87, 530 P.2d 1158, 1162, where we stated that "[t]he formal defect in [Meidinger] could in no way have infringed on the rights of the defendant and was not prejudicial," we did not directly address the issue again until State ex rel. Sanford v. District Court Thirteenth Judicial Dist. (1976), 170 Mont. 196, 551 P.2d 1005. As in Meidinger and Snider, the search warrant in Sanford was directed to "[a]ny Peace Officer of this State." Sanford, 170 Mont. at 198, 551 P.2d at 1006. Without analysis or further discussion, we held in Sanford that we would be unwilling to allow the practice to continue and noted that we had previously condemned the State's practice of routinely directing search warrants to "any" peace officer. Sanford, 170 Mont. at 198, 551 P.2d at 1006. There we stated that "[w]e simply will not tolerate further violation of section 95-703, R.C.M. 1947 [now § 46-5-223, MCA], to permit incursions by law enforcement officers into a constitutionally protected area." Sanford, 170 Mont. at 199, 551 P.2d 1006. For that reason, we reversed the district court's denial of the defendant's motion to suppress evidence.

¶18 Based on our decision in Sanford, Pipkin contends that anything but strict

compliance
with § 46-5-223, MCA, violates the Fourth Amendment.  Because this warrant was not
addressed to officer Chenoweth, Pipkin contends that suppression is required.

¶19  Our review of the record leads us to conclude that Pipkin has not been prejudiced by
the State's procedural omission, and that the effect of failure to comply with a statutory
procedural requirement must be considered in the context of other relevant statutory
provisions.  In that regard, § 46-5-103, MCA, states that "[a] search and seizure, whether
with or without a warrant, may not be held to be illegal if . . . any irregularity in the
proceedings has no effect on the substantial rights of the accused."  Considering the purpose
of § 46-5-223, MCA, and the facts in this case, we conclude that Pipkin's substantial rights
have not been affected by the fact that the salutation of the warrant was not directed to
Chenoweth.

¶20  Our approach finds support in recent search and seizure decisions of this Court in
which we have considered violations of statutory procedure to determine whether that
violation affected the substantial rights of the accused.  In State v. Steffes (1994), 269 Mont.
214, 887 P.2d 1196, State v. Cope (1991), 250 Mont. 387, 819 P.2d 1280, overruled on other
grounds by State v. Bower (1992), 254 Mont. 1, 7, 833 P.2d 1106, 1110, and State v.
Chatriand (1990), 243 Mont. 375, 792 P.2d 1107, we held that the State's failure to comply
with ministerial statutory requirements does not void an otherwise valid search so long as the
purpose of the statute in question is fulfilled.  In each case we concluded that the State's
failure to comply with statutory procedure did not affect the substantial rights of the
defendants.

¶21  Similarly, in this case, the Justice of the Peace complied with all applicable
constitutional provisions and, but for the omission of Chenoweth's  name in the heading of
the warrant, all of Montana's statutory provisions.  To suppress all evidence obtained as a
result of the search warrant because Chenoweth's name was not in the heading, even though
he applied for the warrant, served the warrant, and executed the return of service for the
warrant, would be an irrational result.

¶22  Even when the defect in the search warrant is one of constitutional magnitude, we
have refused to automatically invoke the exclusionary rule.  See State v. Peterson (1987),
227 Mont. 503, 741 P.2d 392; State v. Broell (1991), 249 Mont. 117, 814 P.2d 44.  In
Peterson, the defendant claimed that the incriminating evidence seized should be

excluded
because the search warrant was not supported by probable cause and it did not particularly
describe the items to be seized.  We held that although the search warrant, standing alone,
would be invalid for its failure to describe with particularity the contraband to be seized,
the warrant was valid because:

> When the application for the search warrant and the search warrant are read
> together and when, as in this case, the application is signed by the officer
> named in the warrant as the officer directed to make service of the warrant and
> who did personally make such service, the documents in combination satisfy
> the requirement of particularly describing the thing to be seized.

Peterson, 227 Mont. at 506, 741 P.2d at 394.  We reaffirmed our holding that it is
appropriate to read the search warrant and the search warrant application together when
considering the statutory and constitutional requirement of particularity in Broell, 249 Mont.
at 122, 841 P.2d at 47.

¶23  When we apply the same approach to this case we conclude that the purpose of
§ 46-5-223, MCA, has been satisfied and, therefore, that Pipkin's substantial rights have not
been affected.

¶24  When read alone, the search warrant in this case clearly identifies, on the first line of
the text, that "[a] sworn application has been made before [Judge Beitz] by Deputy Darrell
Chenoweth."  When read in combination with the application for the search warrant, it is
clear that Chenoweth swore to the accuracy of the information presented therein. The fact
that Chenoweth directed the execution of the search warrant is evident by the fact that he
personally filed the return of service with the court.  If Pipkin could not determine the officer
to whom the warrant was directed and by whom it was executed from the language of the
warrant itself, she could have easily determined the officer's identity from the return of
service.  Despite technical noncompliance with the statute, the information the statute was
intended to provide was otherwise available to the person who was subject to the warrant.

¶25  As stated by the Commission Comments, the purpose of the requirement in
§ 46-5-223, MCA, that the officer be named, "presumes that the officer will have knowledge
of the place to be searched and the object to be seized." Section 46-5-223, MCA,
Commission Comments.  Clearly, Chenoweth, the officer who swore to the accuracy of the
information contained within the warrant application and who was named in the warrant, had

knowledge of the place to be searched and the objects to be seized.

¶26 We recognize that the requirement of including the officer's name in the heading of the warrant is more than a mere formality. In any instance where this requirement is not met, the noncompliance must be carefully examined to see if the interests of the defendant have been compromised.

¶27 However, the public policy of this state is to encourage law enforcement officers to seek prior judicial approval before conducting searches, and to conduct those searches pursuant to search warrants. Therefore, technical attacks on warrants must be dealt with in a realistic manner. The correct approach is to analyze the facts and circumstances of each case to determine whether the irregularity in procedure has had an affect on the substantial rights of the accused.

¶28 Our application of that approach to the facts of this case leads us to the conclusion that the omission of Chenoweth's name from the heading of the search warrant was an irregularity in the procedure that did not affect Pipkin's substantial rights. Accordingly, we conclude that the District Court erred when it ordered that all evidence obtained as a result of the search warrant be excluded. We reverse the District Court's suppression order and remand for further proceedings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE
/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ WILLIAM E. HUNT, SR.
/S/ W. WILLIAM LEAPHART